

Allianz Global Corporate & Specialty
225 W. Washington St., Suite 1800
Chicago, IL 60606

## DECLARATIONS

### COMPANY SPONSORED LIFE INSURANCE AGENTS
### ERRORS AND OMISSIONS LIABILITY INSURANCE COVERAGE

**POLICY NUMBER**: USF006044220011

**GROUP NUMBER (RISK ID):** 346
**PRODUCER NAME:** Brown & Brown Program Insurance Services, Inc., dba: CalSurance Associates

**PRODUCER CODE:** CALS0003

**PREVIOUS POLICY NUMBER**:
USF006044210011

**ALLIANZ GLOBAL CORPORATE & SPECIALTY®**
Coverage is provided in the
following company, a stock company:
**FIREMAN'S FUND INSURANCE COMPANY**

**INSURED AND MAILING ADDRESS**:
Life and Health Insurance Agents of the Financial Sales Professionals Purchasing Group
c/o CalSurance Associates
681 S. Parker Street, Ste. 300
Orange, CA 92868

**SPONSORING COMPANY**: The Financial Sales Professionals Purchasing Group

**POLICY PERIOD**: **FROM:** November 1, 2022   **TO:** November 1, 2023
(12:01 A.M. Standard Time at the Named Insured's Address Stated Above)

### CLAIMS MADE AND REPORTED
**Subject to its terms, this Policy provides coverage for claims first made and reported to American Automobile Insurance Company during the Policy Period or Extended Reporting Period, if applicable. Please read and review the Policy carefully.**

In return for the payment of the premium, and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this Policy.

**PREMIUM DUE AT INCEPTION:** 

## COVERAGES AND LIMITS OF INSURANCE
Insurance is provided only for those Coverages and Limits of Insurance shown below.

**LIMITS OF INSURANCE**: As per Limits of Liability and Basis of Premium Endorsement

**DEDUCTIBLE AMOUNT:** As per Limits of Liability and Basis of Premium Endorsement

**DECLARATIONS - CONTINUED**

**COMPANY SPONSORED LIFE INSURANCE AGENTS
ERRORS AND OMISSIONS LIABILITY INSURANCE COVERAGE**

---

**RETROACTIVE DATE:**  As per Retroactive Date Amendatory Endorsement
This insurance does not apply to any Wrongful Acts which occurred before the Retroactive Date, if any, shown above.

**EXTENDED REPORTING PERIOD:**  As per Amended Conditions & ERP Term Options Endorsements

This Declarations page, together with the Insuring Agreement, Conditions, and any Endorsements, constitute the entire contract between the Policyholder and the Company.

---

**FORMS AND ENDORSEMENTS ATTACHED AT INCEPTION:**  144214 09/05 Sponsored Life Insurance Agents E&O Liability Insurance Coverage; 144229 Loss Only Deductible Amendment; 144234 Deductible Removal; 144226 Amendment of Dishonesty Exclusion Endorsement; 144343 09 05 Regulatory Defense Endorsement; 144349 Insured Versus Insured Endorsement; 144074 09/05 Amended Conditions for Certificates of Insurance; 144223 07/04R Claim Notice Address Amendment; 144214 09 05 Personal Data Compromise; 144494 Limited Employment Practices Liability Endorsement; Property & Casualty Insurance Products Coverage Extension-Personal Lines Only; Amended Conditions Endorsement; Retroactive Date Amendatory Endorsement; Extended Reporting Term Options Endorsement; Amended Definition of Agent Endorsement; Amended Definition of Product Provider Endorsement; Amended Insolvency Exclusion Endorsement; Coverage Enhancement Endorsement-Level I; Coverage Enhancement Endorsement-Level II; Coverage Enhancement Endorsement-Level III; Coverage Enhancement Endorsement-Level IV; Coverage Enhancement Endorsement-Level V;  Amended Definition of Sponsoring Company Endorsement;  Amended Fiduciary Exclusion Endorsement; Amendatory Endorsement-Excluded Products & Activities; Limits of Liability and Basis of Premium Endorsement; Amendment of Exclusions Endorsement; 144321 New York Amendatory Endorsement; Premium Financing Exclusion Endorsement; Telephone Consumer Protection Act (TCPA) Exclusion Endorsement; Social Engineering Exclusion Endorsement; Employment Related Exclusion Endorsement; Unauthorized Access Exclusion Endorsement; 145985 06 14 Economic or Trade Sanctions Compliance; 145989 (03/17) Cap on Losses from Certified Acts of Terrorism; PHN7157-MU (01/20) Notice of Terrorism Insurance Coverage

| Date of Issue:<br>1/06/2023 | Countersignature of Authorized Agent:<br>*Judith Arbour* |
|---|---|

144210  08
November 2022

Sponsored Life Agents Insurance



**SPONSORED LIFE INSURANCE AGENTS
ERRORS AND OMISSIONS LIABILITY INSURANCE COVERAGE**

**NOTICE – THIS IS A "CLAIMS MADE AND REPORTED" POLICY.**

THIS MEANS THAT COVERAGE APPLIES ONLY TO A **CLAIM** FIRST MADE AGAINST THE **INSURED** AND REPORTED DURING THE **POLICY PERIOD** OR, IF APPLICABLE, DURING THE EXTENDED REPORTING PERIOD, EXCEPT TO THE EXTENT THAT AS MAY OTHERWISE BE PROVIDED IN THE POLICY.

Read this entire Policy carefully to determine **Your** rights and duties, **Our** rights and duties and what is and is not covered.  Various provisions in this Policy restrict coverage.

Throughout this Policy the words **You** and **Your** refer to the **Insured**. The words **We**, **Us** and **Our** refer to the Company providing this insurance.

In consideration of the payment of the premium, **Your** promise to pay the Deductible shown in the Declarations, and in reliance on all statements made and information **You** furnished to **Us**, including the statements made in the Application and subject to the Limit of Insurance stated in the Declarations, and all of the terms and conditions of this Policy, **We** and **You** agree as follows:

**I.     COVERAGE**

    **A.     Insuring Agreements**

        **1.     Agents Errors and Omissions Liability**

            **We** will pay on the **Agent's** behalf all **Loss** which such **Agent** is legally obligated to pay as a result of a **Claim** first made against such **Agent** or its **Agency/Agency Staff** and reported to **Us** during the **Policy Period** in accordance with Section VI. Conditions I.2., provided that such **Claim** is for a **Wrongful Act** in the rendering of or failure to render **Professional Services** in connection with a **Covered Product** if that **Wrongful Act** occurs wholly after the **Retroactive Date**.

        **2.     Sponsoring Company Vicarious Liability**

            **We** will pay on behalf of the **Sponsoring Company** all **Loss** which the **Sponsoring Company** is legally obligated to pay as a result of a **Claim** first made against the **Sponsoring Company** and reported to **Us** during the **Policy Period** in accordance with Section VI. Conditions I.2., provided that such **Claim** is solely for a **Wrongful Act** of an **Agent** or its **Agency/Agency Staff** in the rendering of or failure to render **Professional Services** in connection with a **Covered Product** if that **Wrongful Act** occurs wholly after the **Retroactive Date**. No coverage is provided for any actual or alleged act, error or omission of the **Sponsoring Company**.

    **B.     Extensions**

        **1.     Estates and Legal Representatives**

            This Policy shall afford coverage for a **Claim** for the **Wrongful Act** of a natural person **Insured** made against the estates, heirs or legal representatives of such **Insured** who is deceased, or against the legal representatives of such **Insured** who is incompetent or bankrupt to the extent that in the absence of such death, incompetence, or bankruptcy, such **Claim** would have been covered by this Policy.

**Sponsored Life Agents Insurance**

**2.    Spousal Liability**

If a **Claim** against a natural person **Insured** includes a claim against such **Insured's** lawful spouse solely by reason of such person's legal status as a spouse of such **Insured**, including a claim that seeks damages recoverable from marital community property, property jointly held by the natural person **Insured** and the spouse, or property transferred from the natural person **Insured** to the spouse, all loss which such spouse becomes legally obligated to pay by reason of such claim shall be treated for purposes of this Policy as **Loss** which such **Insured** becomes legally obligated to pay.  All terms and conditions of this Policy, including without limitation the Deductible, shall apply to such spousal **Loss**. This coverage extension shall not apply to any act, error, omission, or **Personal Injury** committed by such **Insured's** spouse.

**C.    Defense, Investigation and Settlement of a Claim**

**1.**    With respect to insurance provided by this Policy, **We** have the right and duty to defend **You**, including the right to select counsel for any civil proceeding brought against **You**. **We** shall have the right to conduct any investigation or negotiation and make any settlement of any **Claim**.

For any **Claim** to which this Policy applies:

**2.**    In addition to the Limit of Insurance, **We** shall pay all **Claim Expenses** that **We** incur in any such **Claim** until the Limit of Insurance shown in the Declarations is exhausted. **We** have no obligation to pay **Claim Expenses**, to defend, or to indemnify, once the Limit of Insurance is exhausted.

**3.**    **Our** obligation to defend **You** and to pay **Claim Expenses** ends when the Limit of Insurance set forth in the Declarations is exhausted by payment of **Loss** or by deposit or tender of the Limit of Insurance into court.

**4.**    **You** may not incur any **Claim Expenses** or admit liability for or settle any **Claim** without **Our** prior written consent, which shall not be unreasonably withheld. **We** shall not be liable for any expense, settlement, assumed obligation or admission to which **We** have not consented.

**5.**    **You** agree to cooperate with **Us** in the defense, investigation, and settlement of any **Claim** and agree, as a condition of coverage under this Policy, to submit to **Us** upon request such information and documentation as **We** may require in the investigation and defense of any **Claim**.

**D.    Supplemental Payments**

In addition to the Limit of Insurance, **We** shall pay:

**1.**    Any premium for appeal bonds for the covered part of the judgment provided, however, that **We** have no obligation to apply for, furnish, or have any court approve such bonds, or provide any collateral for such bonds;

**2.**    Post judgment interest; and

**3.**    All reasonable expenses incurred by the **Insured** at **Our** request to assist **Us** in the investigation or defense of any **Claim**, including actual loss of earnings because of time off work, up to $500 per day;

provided, however, **We** have no obligation to make any Supplemental Payment once the Limit of Insurance shown in the Declarations is extinguished by payment of **Loss**.

## II.   TERRITORY

This insurance applies to **Wrongful Acts** committed by an **Insured** anywhere in the world, provided the entire **Claim** is made within the United States of America, its territories and possessions, Puerto Rico or Canada.

## III.   DEFINITIONS

**A.**   **Agent**, either in the singular or the plural, means any natural person or entity that:

   **1.**   Maintains an agent or general agent contract with the **Sponsoring Company**;
   **2.**   Has elected to enroll for coverage under this Policy and whose enrollment is on file with the **Sponsoring Company** or **Us**; and
   **3.**   Has paid his or her premium for coverage.

**B.**   **Agency/Agency Staff**, either in the singular or the plural, means the following persons or entities, but solely while acting on behalf of the **Agent**:

   **1.**   Any corporation, partnership or other business entity owned and controlled by such **Agent**;
   **2.**   Any natural person who was, now is, or shall be a duly elected or appointed director, officer, manager, member, partner or employee of such **Agent** or a duly elected or appointed director, officer, manager or employee of any entity identified in 1. above; or
   **3.**   Any employee of any business entity of which the **Agent** is also an employee.

**C.**   **Claim**, either in the singular or plural, means:

   **1.**   Any written demand **You** receive for compensatory damages or services for a **Wrongful Act**, including but not limited to, the institution of arbitration proceedings against **You**, or
   **2.**   Any civil proceeding seeking compensatory damages against **You** for a **Wrongful Act**, commenced by the service of a complaint or similar pleading.

All **Claims** against the **Insured** arising out of the same **Wrongful Act** or **Interrelated Wrongful Acts** whether such **Wrongful Acts** involve just the **Insured** or others for whose acts the **Insured** may be legally responsible, or the same or different claimants, will be considered one **Claim**. All **Claims** arising out of **Interrelated Wrongful Acts** will be considered first made at the time the earliest such **Claim** was made against the **Insured**.

**D.**   **Claim Expenses** means reasonable fees and costs incurred in the defense, investigation or appeal of a **Claim** incurred by any lawyer that **We** retain or any lawyer that **You** retain with **Our** written consent. **Claim Expenses** shall not include any remuneration, salaries, regular or overtime wages, or benefits of the **Insured** that are associated with the defense and investigation of a **Claim,** except as provided in Supplemental Payments, Section I. D. above.

**E.**   **Client**, either in the singular or plural, means any entity or natural person to whom the **Agent** has agreed to render **Professional Services**, including any appointed administrator, beneficiary, executor, receiver, or trustee of such natural person or entity.

**F.**   **Covered Product**, either in the singular or plural, means the following products offered by a **Product Provider**:

**Sponsored Life Agents Insurance**

1. Life Insurance, other than Variable Life Insurance products;
2. Accident and Health Insurance;
3. Disability Income Insurance;
4. Fixed Annuities, including Individual Retirement Annuities; or
5. Group Employee Benefit Plans, Life, Accident and Health Plans or Disability Plans, provided such Plans are fully insured at all times, but not including Group or Ordinary Pension or Profit Sharing Plans, Individual Retirement Accounts, Keogh Plans, 401(k) or 501(b) Plans; or
6. Expert witness testimony.

**Covered Product** does not include any plan or arrangement operating as a Multiple Employer Welfare Arrangement (as defined in the Employee Retirement Income Security Act of 1974 including any amendments thereto).

G.   **Insured,** either in the singular or plural, means:

1. The **Agent**, but solely while performing **Professional Services**;
2. The **Agent's Agency/Agency Staff**, but solely while performing **Professional Services**; or
3. The **Sponsoring Company**, but solely with respect to the coverage provided under Insuring Agreement A.2.

H.   **Interrelated Wrongful Acts**, wither in the singular or plural, means **Wrongful Acts** that arise out of, flow from, wither directly or indirectly, one in a series of the same, common, related or repeated facts, matter, events, circumstances, transactions, practices, statements, or decisions, whether such **Wrongful Acts** involve just the **Insured** or others for whose acts the **Insured** may be legally responsible, or the same or different claimants.

I.   **Loss** means compensatory damages, whether part of an award or settlement, and any punitive or exemplary damages awarded against an **Insured**, but only to the extent such punitive or exemplary damages are insurable under the applicable law most favorable to such **Insured**. **Loss** shall not include:

1. Civil or criminal fines or penalties, or taxes;
2. The multiplied portion of any multiple damages award;
3. Non-monetary relief, including any costs incurred in complying with a request, order, judgment or settlement agreement to provide non-monetary relief;
4. The return or withdrawal of fees, commissions, or brokerage charges; or
5. Any matter deemed uninsurable under the law pursuant to which this Policy shall be construed.

J.   **Personal Injury** means:

1. False arrest, detention or imprisonment;
2. Malicious prosecution;
3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy;
4. Oral or written publication of material that slanders or libels a person or organization or that disparages a person's or organization's goods, products or services; or
5. Oral or written publication of material that violates a person's right of privacy.

K.   **Plan Administration** means, with respect to any Group Employee Benefit Plan, Life, Accident and Health Plan or Disability Plan that is a **Covered Product**:

1. Giving advice, counsel or interpretation to employees;
2. Handling records; or

**Sponsored Life Agents Insurance**

     **3.**    Effecting enrollment, termination or cancellation of employees.

**L.**   **Policy Period** means the period of time from the Inception date of this Policy to the Expiration date shown in the Declarations, or if applicable, any earlier cancellation date. The **Policy Period** does not include the Extended Reporting Period, if any.

**M.**   **Product Provider** means:

     **1.**    The **Sponsoring Company**; and

     **2.**    Any insurance company that offers **Covered Products**, if such insurance company was authorized to transact such business in the state or jurisdiction in which such business was conducted and at the time such business was conducted; or

     **3.**    A group insurance plan or trust that offers **Covered Products** if such plan or trust was fully insured by an insurance company authorized to transact business in the state or jurisdiction in which such business was conducted and at the time such business was conducted;

provided, however, **Product Provider** does not include a reinsurance company or a wholly or partially self-insured plan, trust or risk retention group.

**N.**   **Professional Services** means the following services rendered in connection with a **Covered Product** by the **Agent** or its **Agency/Agency Staff** to a **Client** in the conduct of such **Agent's** profession as a Life or Accident and Health Insurance Agent, General Agent or Broker, a Property and Casualty Insurance Agent or Broker, or a Notary Public, so long as such **Agent** is properly licensed to render such services on any date on which a **Wrongful Act** involving such services is alleged to have occurred:

     **1.**    Soliciting (whether directly or indirectly), negotiating, placing, recommending, selling or servicing a **Covered Product**; provided, however, **Professional Services** shall not include the **Agency/Agency Staff** directly soliciting or selling products;

     **2.**    Providing advice or consulting solely related to a **Covered Product**, including financial planning or consulting solely related to a **Covered Product**;

     **3.**    Assisting a **Client** in obtaining premium financing for a **Covered Product** through an entity not affiliated with any **Insured**;

     **4.**    **Plan Administration**;

     **5.**    The supervision or training of **Agency/Agency Staff** or of another agent contracted with the **Sponsoring Company** in connection with the **Professional Services** described in **1.** through **3.** above.

However, **Professional Services** shall not include in any way, whether or not by an **Insured**, the ownership, creation, formation, operation, or administration of claims for:

     **a.**    Any Multiple Welfare Arrangement;

     **b.**    Any health maintenance organization or preferred provider organization;

     **c.**    Any pool, syndicate, association or other combination formed for the purpose of providing insurance or benefits; or

     **d.**    Any risk retention group, purchasing group, captive or self-insurance program.

**O.**   **Retroactive Date** means the earlier of:

     **1.**    The Inception Date of the **Agent's** first claims-made life insurance agents professional liability policy from which date coverage has been maintained in force without interruption; or

     **2.**    The Inception Date of the **Agent's** continuously maintained agent or general agent

**Sponsored Life Agents Insurance**

contract with the **Sponsoring Company**.

The **Retroactive Date** for the **Sponsoring Company** shall be the same as is applicable to the **Agent** whose **Wrongful Act** gave rise to the **Claim** against the **Sponsoring Company**, and the **Retroactive Date** for the **Agency/Agency Staff** shall be the same as is applicable to the **Agent** who is responsible for such **Agency/Agency Staff**.

**P.**   **Sponsoring Company** means the insurance company identified as such in the Declarations and any **Subsidiary**.

**Q.**   **Subsidiary** means any corporation in which the **Sponsoring Company** owns, on or prior to the **Policy Period**, more than fifty percent (50%) of the outstanding stock representing the present right to vote or select a majority of the board of directors, whether directly or indirectly through one or more of its **Subsidiaries**.

If the **Sponsoring Company** creates or acquires a corporation during the **Policy Period**, such that the **Sponsoring Company** owns more than fifty percent (50%) of the outstanding stock representing the present right to vote or select a majority of the board of directors, whether directly or indirectly through one or more of its **Subsidiaries**, then such corporation shall automatically be deemed a **Subsidiary** as of the time of such creation or acquisition, provided the number of the agents of such corporation is less than twenty percent (20%) of the total number of **Agents** of the **Sponsoring Company** as of the inception of this Policy.

If the **Sponsoring Company** creates or acquires a corporation during the **Policy Period**, such that the **Sponsoring Company** owns more than fifty percent (50%) of the outstanding stock representing the present right to vote or select a majority of the board of directors, whether directly or indirectly through one or more of its **Subsidiaries**, then such corporation shall be deemed a **Subsidiary** as of the time of such creation or acquisition, provided that:

1.   The number of the agents of such corporation is twenty percent (20%) or more of the total number of **Agents** of the **Sponsoring Company** as of the inception of this Policy; and
2.   The **Sponsoring Company** provides **Us** with full particulars of such corporation within sixty (60) days of such creation or acquisition, agrees to any additional amendment of the Policy that **We** require and pays any additional premium **We** require.

**R.**   **Wrongful Act,** either in singular or plural, means:

1.   Any actual or alleged negligent act, error or omission, or negligent misstatement or misleading statement by any **Agent** or its **Agency/Agency Staff** in the rendering of or failure to render **Professional Services**; or
2.   Any actual or alleged negligent **Personal Injury** arising out of any **Agent's** or its **Agency/Agency Staff's** rendering of or failure to render **Professional Services**.

## IV.   EXCLUSIONS

**We** shall not be liable to make any payment for **Loss** in connection with any **Claim**:

**A.**   Based upon or arising out of any dishonest, fraudulent, criminal, malicious, intentional or willful act or omission by any **Insured** or any loss expected or intended by any **Insured**; provided, however, this exclusion shall not apply unless there is a judgment, final adjudication or admission adverse to such **Insured** establishing that such **Insured** committed such conduct;

**Sponsored Life Agents Insurance**

**B.** Based upon or arising out of any **Insured** gaining in fact any personal profit or advantage to which such **Insured** was not legally entitled;

**C.** Based upon, arising out of or in any way involving any actual or alleged:

    **1.** Bodily injury, including sickness, injury, disease or death of any person; provided, however, this exclusion shall not apply to emotional distress or mental anguish solely based upon or arising out of the **Insured's** rendering of or failure to render **Professional Services**; or

    **2.** Damage to or destruction of any property, including loss of use thereof;

**D.** Based upon, arising out of or in any way involving any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, service mark or misappropriation of ideas or trade secrets, piracy or plagiarism;

**E.** Based upon, arising out of or in any way involving:

    **1.** Any pension, welfare or benefit plan organized for the benefit of employees of the **Insured**; or

    **2.** Any **Insured's** obligations or services as a fiduciary or trustee under the Employee Retirement Income Security Act of 1974, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Pension Benefits Act, including any rules or regulations promulgated under any of the foregoing, or any similar provisions of any state statutory law or common law;

**F.** Based upon, arising out of or in any way involving any **Insured's** actions, activities, responsibilities or duties as a third party administrator of any plan, whether insured or self-insured;

**G.** Based upon, arising out of or in any way involving any:

    **1.** Liability of others assumed by any **Insured** in a written or oral contract or agreement; or

    **2.** Actual or alleged liability of any **Insured** under any written or oral contract or agreement;

provided, however this exclusion shall not apply to liability of any **Insured** which would exist in the absence of such contract or agreement;

**H.** Based upon, arising out of or in any way involving any actual or alleged warranty, promise, guarantee or representation as to the value or yield of any **Covered Products** or as to non-guaranteed interest rates or future premium payments;

**I.** Based upon, arising out of or in any way involving any actual or alleged:

    **1.** Liability for any employment-related practices, acts or omissions, whether in violation of contract or statutory or common law, including without limitation: refusal to employ; wrongful termination of employment; discrimination or harassment of any kind; breach of employment contract; wrongful demotion, evaluation, reassignment or discipline; defamation, slander or libel; invasion of privacy, infliction of emotional distress; invasion of privacy; or retaliation; or

    **2.** Discrimination or harassment of any kind, other than any discrimination or harassment excluded in **1.** above, against any person or entity;

**Sponsored Life Agents Insurance**

**J.** Based upon, arising out of or in any way involving any services performed by the **Insured,** whether or not the **Insured** is licensed as such, as:

    **1.** an accountant, architect, actuary, tax preparer or advisor (except for tax advice provided directly concerning a **Covered Product**), attorney, real estate agent or broker;

    **2.** an engineer, a financial planner or registered investment adviser, except as to services directly related to a **Covered Product**; or

    **3.** securities broker or dealer;

**K.** Based upon, arising out of:

    **1.** The collection, payment or return of, or the failure to collect, pay or return, any commission, fee, tax, or premium;

    **2.** Any dispute with another insurance agent or broker, including, but not limited to, any dispute concerning commissions, fees, client lists or entitlements; or

    **3.** Any commingling, misappropriation or conversion of **Client** funds;

**L.** Based upon, arising out of or in any way involving any actual or alleged unauthorized use or release of any confidential or private information pertaining to any **Client**, any director, manager, partner, member, officer or employee of any **Client** or any family member of any such person;

**M.** Based upon, arising out of or in any way involving any bankruptcy, receivership, conservatorship, insolvency, or financial inability to pay of any organization, including but not limited to a **Product Provider**, regardless of when the financial impairment of such organization began and whether or not any **Insured** was aware or could have been aware of the financial impairment of such organization; provided, however, this exclusion shall not apply if at the time of the **Wrongful Act** the **Product Provider** was:

    **1.** An admitted Property Casualty Insurance Company rated B+ or better by A.M. Best Company, or a Life Insurance/Accident and Health Insurance Company rated A- or better by A.M. Best Company;

    **2.** A non-admitted insurance company rated A- or better by A.M. Best Company that is also authorized to conduct business in the applicable state in which the **Covered Product** involved was sold, placed or obtained, or;

    **3.** The **Product Provider** was guaranteed by a governmental body or bodies or operated by a governmental body or bodies (including but not limited to assigned risk plans, Joint Underwriting Association's, or fair plans) or was a County Mutual reinsured by carriers rated B+ or better by A.M. Best Company, or was part of the Iowa Communities Assurance Pools (ICAPS);

**N.** Based upon, arising out of or in any way involving the direct or indirect placement of, or any recommendation to place, any **Client's** insurance, coverage, funds, premium, or product with or in any **Product Provider**, entity or vehicle not licensed to transact such business in the state or jurisdiction in which such business was conducted; provided, however, this exclusion shall not apply with respect to any **Product Provider** authorized or approved as a surplus lines insurer or carrier in the state or jurisdiction in which such business was conducted;

**O.** Based upon, arising out of or in any way involving any promissory notes, viatical or life settlements or contracts or viatical investment pools or any securities (as defined in the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, and the Investment Advisers Act of 1940, and any amendments thereto) backed by viatical settlements, commodities, commodity future contracts, or option contracts;

**Sponsored Life Agents Insurance**

**P.**    Based upon, arising out of or in any way involving the offering, sale or servicing of any structured settlement; provided, however, this exclusion shall not apply to a **Claim** solely based upon or arising out of the selling or servicing of a **Covered Product** utilized to fund a structured settlement;

**Q.**    Based upon or arising out of:

    **1.**    Any **Wrongful Act** or any fact, circumstance or situation which has been the subject of any notice given under any insurance policy prior to the Inception date of this Policy;

    **2.**    Any other **Wrongful Act** whenever occurring, which, together with a **Wrongful Act** which has been the subject of such notice, would constitute **Interrelated Wrongful Acts**; or

    **3.**    Any **Wrongful Act** of which the **Insured** had actual or constructive knowledge as of the Inception of this Policy and which could have reasonably been expected to result in a **Claim**;

**R.**    For **Personal Injury** based upon or arising out of:

    **1.**    The oral or written publication of material, if done by or at the direction of the **Insured** with knowledge of its falsity; or

    **2.**    The oral or written publication of material whose first publication took place before the Retroactive Date;

**S.**    By or on behalf of the **Sponsoring Company** or any **Agent**; provided, however, this exclusion shall not apply to a **Claim** brought in the form of a cross-claim or third-party claim arising from a **Claim** made against such **Sponsoring Company** or **Agent** that is otherwise covered under this Policy;

**T.**    Based upon, arising out of or in any way involving any actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous, thermal, or aural irritant, pollutant, contaminant, including but not limited to, noise, lead, asbestos, smoke, vapors, soot, fumes, acids, alkalis, chemicals, or waste materials (including those that are or are to be stored, recycled, reconditioned or reclaimed), into or upon land, air, water or property; or

**U.**    Based upon, arising out of or in any way involving any nuclear reaction, radiation, radioactive contamination or radioactive substance, in any form, no matter how emitted.

**V.    LIMIT OF INSURANCE AND DEDUCTIBLE**

**A.**    Subject to Section V.C., the Limit of Insurance shown in the Declarations as applicable to each **Agent** each **Claim** shall be **Our** maximum liability for **Loss** resulting from each **Claim** made against each **Agent** and its **Agency/Agency Staff** and shall apply in excess of the Deductible.

**B.**    The Limit of Insurance shown in the Declarations as applicable in the Aggregate to each **Agent** shall be **Our** maximum liability for all **Loss** resulting from all **Claims** made against each **Agent** and its **Agency/Agency Staff.**

**C.**    No additional Limit of Insurance is provided to the **Sponsoring Company**; the Limit of Insurance applicable to the **Sponsoring Company** shall be that Limit of Insurance applicable to the **Agent** whose **Wrongful Acts** gave rise to the **Claim** against the **Sponsoring Company**, and **Loss** paid on behalf of the **Sponsoring Company** shall reduce and may exhaust the Limit of Insurance applicable to such **Agent**.

Sponsored Life Agents Insurance

**D.** **We** shall only be liable to pay **Loss** and **Claim Expenses** in excess of the Deductible shown in the Declarations, which Deductible shall apply to each and every **Claim**.

**E.** The Deductible may only be satisfied by an actual cash payment by **You** and may not be satisfied by the release of a claim or counterclaim. **You** agree that the Deductible shall be uninsured.

## VI.   CONDITIONS

### A.   Entire Agreement

It is agreed that this Policy together with any endorsements and the Declarations constitute the entire agreement existing between **You** and **Us**.

### B.   Policy Extended Reporting Period

**1.** If the **Sponsoring Company** or **We** cancel or non-renew this Policy for any reason other than for non-payment of premium, the **Sponsoring Company** shall have the right, upon payment of the additional premium stated in the Declarations, to purchase an Extended Reporting Period of the duration stated in the Declarations.

**2.** The Extended Reporting Period applies only to a **Claim** first made against **You** and reported to **Us** during the Extended Reporting Period, but only for a **Wrongful Act** committed or allegedly committed before the end of the **Policy Period** and that would have been covered by this Policy if such **Claim** had been first made during the **Policy Period**.

**3.** As a condition precedent to **1.** and **2.** above, all of the following apply:

    **a.** The total premium due for this Policy must have been paid.

    **b.** The Extended Reporting Period is available by endorsement for the additional premium stated in Item 6.a. of the Declarations. It will take effect only if, within ninety (90) days after the end of the **Policy Period**, the **Sponsoring Company** requests it from **Us** in writing and pays to **Us** the additional premium due.

    **c.** The right to purchase an Extended Reporting Period will lapse unless **We** receive written notice of such election, together with payment of the additional premium due is received, within ninety (90) days after the end of the **Policy Period**.

    **d.** The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided by this Policy.

    **e.** The Extended Reporting Period is not cancelable, and the premium will be deemed fully earned at the inception date of such Extended Reporting Period.

    **f.** The Extended Reporting Period will be subject to this Policy's remaining Limit of Insurance, if any, and the purchase of the Extended Reporting Period will not reinstate or increase any Limit of Insurance provided by this Policy.

### C.   Agent Contract Termination/Agent Extended Reporting Period

**1.** If the agency or general agency contract between the **Sponsoring Company** and any **Agent** terminates for any reason, the insurance under this Policy with respect to such **Agent** and its **Agency/Agency Staff** shall cease as of the effective date of the termination of such contract, and no coverage shall be provided under this Policy with

**Sponsored Life Agents Insurance**

respect to any **Wrongful Act** of any such **Agent** or its **Agency/Agency Staff** committed or allegedly committed on or after the effective date of the termination of such contract.

**2.**   If the agency or general agency contract between the **Sponsoring Company** and any **Agent** terminates for any reason other than the **Sponsoring Company** terminating such contract for cause, then:

**a.**   The **Agent** and its **Agency/Agency Staff** shall automatically receive an extension of the insurance afforded by this Policy to apply to any **Claim** first made against the **Agent** or its **Agency/Agency Staff** and reported to **Us** during the ninety (90) days immediately following the effective date of the termination of such contract, but only for a **Wrongful Act** committed or allegedly committed before the effective date of the termination of such contract and otherwise covered by this Policy; and

**b.**   The **Agent** or, if the **Agent** is deceased, his or her estate, shall have the right, upon payment of the additional premium stated in the Declarations, to purchase an Extended Reporting Period of the duration stated in the Declarations. This Extended Reporting Period applies only to a **Claim** first made against the **Agent** or its **Agency/Agency Staff** and reported to **Us** during the Extended Reporting Period, but only for a **Wrongful Act** committed or allegedly committed before the effective date of the termination of such contract and otherwise covered by this Policy.

**3.**   If the agency or general agency contract between the **Sponsoring Company** and any **Agent** terminates because the **Sponsoring Company** terminates such contract for cause, the **Agent** and its **Agency/Agency Staff** shall automatically receive an extension of the insurance afforded by this Policy to apply to any **Claim** first made against the **Agent** or its **Agency/Agency Staff** and reported to **Us** during the thirty (30) days immediately following the effective date of the termination of such contract, but only for a **Wrongful Act** committed or allegedly committed before the effective date of the termination of such contract and otherwise covered by this Policy.

**4.**   As a condition precedent to 2.b. above, all of the following apply:

a. The total premium due for this Policy must have been paid.

b. The Extended Reporting Period is available by endorsement for the additional premium stated in Item 6.b. of the Declarations. It will take effect only if, within ninety (90) days after the effective date of the termination of the **Agent's** contract, the **Agent** or the estate of the deceased **Agent** requests it from **Us** in writing and pays to **Us** the additional premium due.

c. The right to purchase such an Extended Reporting Period will lapse unless **We** receive written notice of such election, together with payment of the additional premium due is received, within ninety (90) days after the effective date of the termination of the **Agent's** contract.

d. The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided by this Policy.

e. The Extended Reporting Period is not cancelable, and the premium will be deemed fully earned at the inception date of such Extended Reporting Period.

f. The Extended Reporting Period will be subject to this Policy's remaining Limit of Insurance, if any, and the purchase of the Extended Reporting Period will not reinstate or increase any Limit of Insurance provided by this Policy.

**Sponsored Life Agents Insurance**

**D.    Documentation Requirements For Prior Acts Coverage**

If an **Insured** tenders a **Claim** to **Us** for a **Wrongful Act** that allegedly occurred before the effective date of that **Insured's** coverage under this Policy such **Insured** shall provide written evidence satisfactory to **Us** that there has been in force an uninterrupted claims-made Life Insurance Agents' Errors and Omissions Liability Insurance Policy, from the Inception Date of the first such claims-made policy to the effective date of coverage for the **Insured** under this Policy.

**E.    Reporting of Potential Claims**

If during the **Policy Period**, **You** first become aware of a **Wrongful Act** which might reasonably be expected to give rise to a **Claim** and, during the **Policy Period** or within sixty (60) days after the end of the **Policy Period**, give written notice to **Us** of such **Wrongful Act** as required below, then any **Claim** subsequently made against **You** by reason of such **Wrongful Act** shall be deemed to have been first made during the **Policy Period**.

Written report of a potential **Claim** shall include:

**1.**    The specific facts or circumstances which constitute the **Wrongful Act**, including the date(s) thereof, and the **Insured** involved;
**2.**    The date and circumstances by which **You** became aware of such **Wrongful Act**; and
**3.**    The **Loss** that may reasonably result.

**F.    Subrogation and Assignment**

**1.**    When **We** pay under this Policy, **We** receive **Your** rights against third parties and may subrogate against third parties. **You** are required to execute and deliver any instruments and papers and do whatever else is necessary to secure **Our** rights. **You** agree not to prejudice **Our** subrogation rights.

**2.**    **You** may not assign any interest in this Policy unless **We** give **Our** prior written consent.

**G.    Changes**

The terms of this Policy shall not be waived or changed, except by endorsement issued by **Us** to form a part of this Policy. Notice to any agent or broker or knowledge possessed by any agent or broker or by any other person shall not effect a waiver or change in any part of this Policy or stop **Us** from asserting any right under the terms of this Policy.

**H.    Action Against Us**

**1.**    No one shall sue **Us** unless the following conditions precedent are met:

**a.**    There has been full compliance with all the terms of this Policy; and
**b.**    The amount of the **Your** obligation to pay shall have been finally determined either by judgment against **You** after actual and contested trial on the merits, or by written agreement of the **You**, the claimant, and **Us**.

**Sponsored Life Agents Insurance**

    **2.**    Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by this Policy.

    **3.**    Nothing contained in this Policy shall give any person or organization any right to join **Us** as a co-defendant in any action against **You** to determine **Your** liability. **Your** bankruptcy or insolvency shall not relieve **Us** of any obligation hereunder.

**I.**    **Authorization Clause/Notices**

    **1.**    By acceptance of this Policy by payment of premium, **You** agree that the **Sponsoring Company** shall act on **Your** behalf with respect to the giving and receiving of notice of any cancellation, non-renewal, the payment of premiums, the receiving of any return premiums that may become due under this Policy, or any other notices regarding coverage or other matters.

    **2.**    **You** shall provide notice to **Us** as soon as practicable after a **Claim** is first made against **You** but in no event later than ninety (90) days after the **Policy Period**. This notice shall be deemed sent to **Us** only if it is received by **Us** via facsimile or electronic mail or sent by the **Insured** by prepaid registered or return-receipt-requested mail properly addressed to **Us** as set forth in the Declarations. Notwithstanding the requirement that the **Claim** must first be made and reported to **Us** during the **Policy Period**, if continuous coverage is in effect pursuant to consecutive policies issued by **Us**, a **Claim** may be first made against the **Insured** during one **Policy Period** and may be reported to **Us** in writing during the consecutive, immediately following **Policy Period** without constituting a violation of this provision.

    3.    No insurance agent or broker is appointed or authorized by **Us** to receive the notice required by the Policy. **Your** notice to any insurance broker or agent shall not be notice to **Us**, unless and until **We** receive actual notice at the above address.

**J.**    **Transactions Changing Coverage**

    **1.**    **Change of Control of Sponsoring Company**

    If during the Policy Period any of the following events occur, subject to the other terms of this Policy, coverage under this Policy shall continue as to **Wrongful Acts** occurring prior to the effective date of such event, but there shall be no coverage afforded under this Policy for any **Wrongful Act** occurring after the effective date of such event:

    **a.**    The **Sponsoring Company** consolidating with or merging into, or selling all or substantially all of its assets to any other person or entity or group of persons and/or entities acting in concert, or

    **b.**    Any person or entity or group of persons and/or entities acting in concert that acquire more than fifty percent (50%) of the outstanding stock representing the present right to vote or select a majority of the board of directors of the **Sponsoring Company**.

    This Policy may not be canceled after the effective time of such event and the entire premium for this Policy shall be deemed earned as of such time. The **Sponsoring Company** shall give **Us** written notice of such event as soon as practicable but not later than thirty (30) days after the effective date of such event.

    **2.**    **Cessation of Subsidiaries**

**Sponsored Life Agents Insurance**

If an entity ceases to be a **Subsidiary**, coverage with respect to such **Subsidiary** and its **Agents** and such **Agent's Agency/Agency Staff**, subject to the other terms of this Policy, coverage under this Policy shall continue as to **Wrongful Acts** occurring prior to the effective date of such entity ceasing to be a **Subsidiary**, but there shall be no coverage afforded under this Policy for any **Wrongful Act** occurring after the effective date of such entity ceasing to be a **Subsidiary**.

**K.   Cancellation and Nonrenewal**

**1.   Cancellation**

**a.**   The **Sponsoring Company** may cancel this Policy by mailing or delivering to **Us** advance written notice of cancellation. The **Policy Period** will end on the effective date requested.

**b.**   **We** may cancel this Policy only in the event of non-payment of premium, and if **We** cancel for non-payment of premium, **We** will mail by first class or certified mail, to the **Sponsoring Company** and the agent or broker of record, at their last address known to **Us**, written notice stating the reason for cancellation, at least twenty (20) days before the effective date of cancellation.

**c.**   Notice of cancellation will state the effective date of cancellation. The **Policy Period** will end on the date of cancellation.

**d.**   If this Policy is cancelled, **We** will send the **Sponsoring Company** any premium refund due.  If **We** cancel, the refund will be the pro rata unearned premium.  If the **Sponsoring Company** cancels, the refund may be less than pro rata. The cancellation will be effective even if **We** have not made or offered a refund.

**e.**   A post office certificate of mailing or certified mail receipt will be sufficient proof of mailing of notice.

**2.   Non-renewal by Us**

**a.**   **We** are not required to renew this Policy when it expires.

**b.**   If **We** elect not to renew this Policy, **We** will mail by first class or certified mail, to the **Sponsoring Company** and the agent or broker of record, at their last address known to **Us**, written notice stating the reason for non-renewal, at least sixty (60) days but not more than one hundred and twenty (120) days before the effective date of non-renewal.

**c.**   Notice of non-renewal will state the effective date of non-renewal.  The **Policy Period** will end on the date of non-renewal.

**d.**   A post office certificate of mailing or certified mail receipt will be sufficient proof of mailing of notice.

**L.   Other Insurance**

**1.**   The insurance provided by this Policy shall apply only in excess of any other insurance available to **You** and shall not contribute with other such insurance.
If **You** have other insurance against the **Loss** covered by this Policy, this Policy shall be excess over any other valid and collectible insurance and then shall apply only in the

**Sponsored Life Agents Insurance**

amount by which the applicable Limit of Liability of this Policy exceeds the sum of the applicable Limit of Liability of all such other insurance.

This provision will not apply if the **Insured** has similar coverage with **Us,** or one of **Our** affiliates.  In this event, the **Insured** must elect under which policy the claim will be made and the other policy will be void and any premium will be refunded.

2.   **You** shall provide notice to all other insurers which reasonably might provide coverage as soon as practicable after the **Your** receipt of a **Claim** or obtaining information regarding a potential **Claim**.

**M.   Enrollment Audit**

In the event that the **Sponsoring Company** is keeping on file the enrollment of **Agents** for coverage under this Policy, then the **Sponsoring Company** shall, upon **Our** request at reasonable times and places that **We** designate, submit all documents, files and records pertaining to such **Agent** enrollment to **Our** examination and subscribe to the same under oath and cooperate with **Us** in all matters relating to such examination.

**N.   Conformance With State Statutes**

Terms of this Policy that are in conflict with the statutes of the state or province in which this Policy is issued and delivered to **You** are hereby amended to conform to such statutes.

**O.   Arbitration**

All disputes between the **Sponsoring Company** and **Us** relating to or arising from amounts owed to the **Sponsoring Company** by an **Agent** or **Agency/Agency Staff** which may be payable under this Policy, amounts **We** may owe under this Policy on the **Agent's** or **Agency's/Agency Staff's** behalf or vicarious liability coverage provided to the Sponsoring **Company** by this Policy, shall be determined by arbitration. Any such dispute shall be submitted to the American Arbitration Association ("AAA") under the AAA's Commercial Arbitration Rules, and shall be decided by a panel of three arbitrators, each party choosing one arbitrator qualified to arbitrate such dispute within ten (10) calendar days after notification of the intent to arbitrate, and the two arbitrators shall choose a third arbitrator. If the first two arbitrators fail to agree on a third arbitrator within ten (10) calendar days thereafter, the AAA shall choose such arbitrator. Upon the third arbitrator's acceptance of the appointment, the Arbitration Panel for the dispute will be deemed fixed. And the third arbitrator shall be the Chairman of the Arbitration Panel. Each of the parties will bear the expense of its, his or her own arbitrator, and will share equally any remaining expenses.

**P.   Liberalization**

If we adopt a change in our forms or rules during the term of this Policy which would broaden the coverage provided by any form that is a part of this policy without an extra premium charge, the broader coverage will apply to this policy.  This extension is effective upon the approval of such broader coverage in your state.

**Sponsored Life Agents Insurance**

IN WITNESS WHEREOF, **We** have caused the signatures of **Our** executive officers to be affixed hereto, and have caused this Policy to be countersigned by **Our** authorized representative.

_____
Secretary

_____
President

This Policy is not valid unless a Declarations page is signed by **Our** authorized representative.



## Deductible Amendment

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance
Coverage
Sponsored Life Insurance Agents Errors and Omissions Liability Insurance Coverage

---

**We** agree with **you** as follows:

**SECTION V – LIMIT OF INSURANCE AND DEDUCTIBLE**, Item **D.** is replaced with the
following:

Before **we** pay any claim under this policy, **we** will subtract the Deductible Amount shown in the
Declarations as applying to Each **Claim** from damages that are incurred with respect to a single
claim.  **We** will only pay the lesser of that part of such damages which exceeds the Deductible
Amount, or the Limit of Insurance that applies.

If **we** pay part or all of the Deductible Amount to effect settlement of any claim, **we** will notify **you**
of our payment of the Deductible. **You** shall reimburse **us** for the part of the Deductible Amount
that **we** paid within 30 days of our notification.

The terms of this insurance, including those with respect to Condition 4. Of **SECTION I
COVERAGE**, paragraph **C. Defense, Investigation and Settlement of a Claim**, **5.**, apply
irrespective of the application of Deductible Amount.

All other terms and conditions remain unchanged.



## Deductible – Removal

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

**We** agree with **you** as follows:

**SECTION V. LIMIT OF INSURANCE AND DEDUCTIBLE** is amended to include:

**D.**     If **You** have been continuously insured by **Us** and have not had a claim made against **You** during the last five years, the Deductible will be waived for the first covered **Claim** made during the current **Policy Period.**

All other terms and conditions remain unchanged.



**Amendment of Dishonesty Exclusion Endorsement**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

In consideration of the premium paid it is understood and agreed that Section **IV. EXCLUSIONS A.** is deleted and replaced by the following:

**A.**  Based upon or arising out of any dishonest, fraudulent, criminal, malicious, intentional or willful act or omission by any **Insured**; provided, however, this exclusion shall not apply unless there is a judgment, final adjudication or admission adverse to such **Insured** establishing that such **Insured** committed such conduct; provided, however, this exclusion only applies to any **Insured** who participated in, acted with knowledge of, or acquiesced to, such conduct;

All other terms and conditions of the Policy remain unchanged.

**Regulatory Defense Endorsement – 144343 09 05**

Independent Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Independent Life Agents Errors and Omissions Liability Insurance Coverage
Sponsored Independent Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

In consideration of the premium paid it is understood and agreed that the following is added to Section **I. COVERAGE, D. Supplemental Payments:**

4.    The reasonable attorneys fees, costs and expenses incurred in responding to an investigation of an **Insured** by a state licensing board, professional regulatory agency, or a governmental agency with authority to regulate **Professional Services,** resulting from the **Insured's** performance of Professional Services.  The maximum we will pay for all **Insureds** regardless of the number of investigations is $25,000 per **Policy Period**. However,

a.    We have the right to appoint legal counsel;
b.    the **Professional Services** leading to the investigation must take place during the **Policy Period**;
c.    the **Insured** must be first notified of the investigation during the **Policy Period** and must provide Us with written notice not later than 30 days after the **Insured** has been notified of the investigation. If the **Insured** fails to give Us such written notice, We are not required to pay under this provision; and
d.    We are not required to pay under this provision for any subsequent Appeals.

All other terms and conditions of the Policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

_Janet S Kloenhamer_

—————————————————
Secretary

_[signature]_

—————————————————
President

144343 9-05



**Insured Versus Insured Exclusion**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

In consideration of the premium paid it is understood and agreed that Section **IV. EXCLUSIONS** is amended to include the following:

Based upon or arising out of or in any way involving any claim or dispute between **Insureds** under this Policy.  However, this exclusion shall not apply if the **Wrongful Act** arises out of **Professional Services** by an **Insured** rendered to such other **Insured** as a **Client** provided the **Insured** rendering such **Professional Service** does not have an equity interest in the property to be insured.

All other terms and conditions of the Policy remain unchanged.



**Amended Conditions for Certificates Of Insurance**

Sponsored Property and Casualty Agents Errors and Omissions Liability
Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

In consideration of the premium charged, it is understood and agreed that the following:

1. Section **VI CONDITONS, C. Agent Extended Reporting Period**, is amended by the addition of:

   If the Policy is evidenced by a Certificate of Insurance issued to the **Agent** of the **Sponsoring Company**, the term **Policy Period** is replaced by **Certificate Period** wherever the term appears.

   **Certificate Period** means the period of time from the inception date of the Certificate of Insurance to the Expiration Date shown in the Certificate of Insurance, or if applicable, any earlier cancellation date.  The **Certificate Period** does not include the Extended Reporting Period, if any.

2. Section **VI CONDITONS, K. Cancellation and Non-renewal**, **2. Non-renewal by Us**, is amended by the addition of:

If the Policy is evidenced by a Certificate of Insurance issued to the **Agent** of the **Sponsoring Company,** identical non-renewal provisions apply to the **Agent** and **Sponsoring Company**.

All other terms and conditions of the Policy remain unchanged.

144074 09 05                                                    Page 1 of 1



**Claim Notice Address Amendment – 144223 07 04**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

In consideration of the premium paid it is understood and agreed that the following is added to Section **VI. CONDITIONS**, paragraph **I. Authorization Clauses/Notices** is amended to add the following to the end thereof:

4.  **You** shall provide notice to **Us** as soon as practicable after a **Claim** is first made against **You** but in no event later than ninety (90) days after the **Policy Period**.  This notice shall be deemed sent to **Us** only if it is received by **Us** via facsimile or electronic mail or sent by the **Insured** by prepaid registered or return-receipt-requested mail properly addressed to **Us** at:

    Fireman's Fund Insurance Company
    c/o Lancer Claims Services
    P.O. Box 7048
    Orange, CA 92868-7048
    Phone: 800-821-0540
    Fax: 714-978-8023
    Email: FirstReports@lancerclaims.com

All other terms and conditions remain unchanged.



**Personal Data Compromise Coverage**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

| | |
|---|---|
| Limit of Insurance: | $50,000 For all **Personal Data Compromise Loss** arising from all **Personal Data Compromise Incidents,** each **Agent,** occurring during the **Policy Period** |
| Deductible: | $2,500 Each **Personal Data Compromise Incident** |

For purposes of the coverage afforded by this endorsement. the following is added or amended to the Policy:

I.  The following is added to Section I. Coverage A, Insuring Agreement:

3.  Subject to the Limit of Insurance and Deductible stated above, and all other terms and conditions of this endorsement and the Policy, **We** will pay on behalf of the **Agent** or **Agency/Agency Staff** those sums qualifying as **Personal Data Compromise Loss** arising out of a **Personal Data Compromise Incident** occurring during the **Policy Period** and reported to **Us** during the **Policy Period**, and in accordance with the requirements of the Duties in the Event of a **Personal Data Compromise Incident** Condition, below.

II. Section III Definitions, B, **Agency/Agency Staff** is deleted in its entirety and replaced with the following:

B.  **Agency/Agency Staff**, either in the singular or the plural, means the following persons or entities, but solely while acting on behalf of the **Agent**:

1.  Any corporation, partnership or other business entity owned and controlled by the **Agent**;

2.  Any natural person who was, now is, or shall be a duly elected or appointed director, officer, manager, member, partner, or employee of such **Agent** or a duly elected or appointed director, officer, manager or employee of any entity identified in 1. above;

3.  Any employee of any business entity of which the **Agent** is also an employee; or

4.  Any natural person who was, now is or shall be a leased or loaned worker to the **Agent**.

III. The following definitions are added to Section III. Definitions:

A.  **Detrimental Code** means any computer virus, program, routine, sub-routine, Trojan Horse, worm, script or other code string that destroys, alters or corrupts or causes a **Personal Data Compromise**, regardless of how the **Detrimental Code** was introduced or acquired.

B.  **Identity Theft** means the fraudulent or illegal use of **Personal Information,** including the fraudulent or illegal use of such information to establish credit accounts, secure loans, enter into contracts, or commit crimes.  However, **Identify Theft** does not include:

1.  The fraudulent or illegal use of a business name or any other method of identifying a business or business activity; or

2.  The fraudulent or illegal direct use of a valid credit card, credit account or bank account, but not including the fraudulent or illegal alteration of account profile information.

C.  **Personal Data Compromise Incident** means the loss, theft, accidental release or accidental publication of a **Client's Personal Information** by an **Agent** or **Agency/Agency Staff** in the course of providing **Professional Services**, if such loss,

144214 09 05



theft, accidental release or accidental publication has or could reasonably result in the fraudulent or illegal use of such information, provided, however, that at the time of the loss, theft, accidental release or accidental publication, the **Personal Information** was in the **Agent** or **Agency/Agency Staff's** direct care, custody or control.

**Personal Data Compromise Incident** does not include:

1. The loss, theft, release or publication of information that is in the care, custody or control of any party who is not an **Insured** to whom **Agent** or **Agency/Agency Staff** have directly or indirectly delivered such information for storage, processing, transmission or transportation;

2. The abandonment or disposal of **Personal Information** that does not take place during the **Policy Period**; or

3. Any intentional, deliberate or reckless failure to use appropriate safeguards such as shredding or destruction in the disposal or abandonment of **Personal Information**.

D. **Personal Data Compromise Loss** means

1. The reasonable and necessary costs for the following legal and forensic information technology review **We** authorize and which is provided by vendors **We** select or approve:

   a. Legal counsel review of the **Personal Data Compromise Incident** and recommendations regarding the most appropriate response by counsel **We** select; and,

   b As deemed to be reasonably necessary, professional information technology review to determine the nature and extent of the **Personal Data Compromise Incident** and the number and identities of **Clients** whose **Personal Information** may be involved in the **Personal Data Compromise Incident**;

2. The reasonable and necessary costs **We** authorize to provide notification of the **Personal Data Compromise Incident** to the **Clients** whose **Personal Information** is involved in the **Personal Data Compromise Incident** by a vendor **We** select; and,

3. The reasonable and necessary costs **We** authorize to provide the following services to **Clients** whose **Personal Information** is involved in the **Personal Data Compromise Incident**, with such services to be provided by a vendor **We** select:

   a. A packet of loss information and customer support;

   b. A toll-free telephone line for the fielding of questions and requests for information by **Clients** involved in the **Personal Data Compromise Incident**;

   c. When a **Client** involved in the **Personal Data Compromise Incident** enrolls in the program provided by the vendor **We** select, a credit report and electronic credit monitoring services; and,

   d. When a covered **Personal Data Compromise Incident** leads to a **Client's Identity Theft**, the services of an identity restoration professional **We** select to assist with the correction of the **Client's** credit and other records, and as may be reasonably possible, the restoration of the **Client's** control over their identity.

However, **Personal Data Compromise Loss** does not include:

i. Any **Loss** or **Claim Expenses**;

ii. Any fines or penalties levied against any party;

iii. Any cost associated with any **Claim** for non-monetary relief , or the cost of any criminal investigation or proceeding;

iv. Any response or payment in response to any threat, extortion or blackmail, including any ransom or the cost of private or other security;



v.   Any fees or surcharges charged by any financial institution; or,

vi.   Any cost, expense or payment of any kind to detect or research or repair or remedy any deficiency in any systems, procedures, processes, policies, internal or external security or any other condition or situation that caused or contributed to any **Personal Data Compromise Incident**.

vii.   Any cost, expense or payment of any kind to retrieve or prevent the use of **Client's Personal Information** by a former **Agent** or **Agency/Agency Staff**.

E.   **Personal Information** means a **Client's** name in combination with any one or more of the following:

1.   Social Security number;

2.   Driver's license number or state identification number;

3.   Account numbers, credit card numbers, debit card numbers, access codes or passwords that would permit access to that **Client's** financial account; or

4.   Other nonpublic **Personal Information** that could be used to facilitate **Identity Theft**.

Provided that **Personal Information** shall not include information that is lawfully made available to the general public for any reason, including information from federal, state, or local government records.

IV.   Section III. Definition E, is deleted in its entirety and replaced with the following:

E.   **Client**, either in the singular or plural, means any natural person for whom the **Agent** or **Agency/Agency Staff** has agreed to render **Professional Services**.  **Client** does not include any business, organization or entity, but does include individuals connected to that business, organization or entity whose **Personal Information** is involved in a covered **Personal Data Compromise Incident** because of the **Agent** or **Agency/Agency Staff's** rendering or failure to render **Professional Services** to that business, organization or entity.

V.   Except as provided otherwise in this Endorsement, Section IV. Exclusions is amended to also apply to all **Personal Data Compromise Incident** and **Personal Data Compromise Loss** with the addition of the following lead in language:

**We** shall not be liable to make any payments for any **Personal Data Compromise Loss** or **Personal Data Compromise Incident**:

VI.   Section IV Exclusions is amended by the deletion of Exclusion L, but only to the extent of the specific coverage provided by this Endorsement.

VII.   The following exclusions are added to Section IV. Exclusions:

A.   Based upon, arising out of or in any way involving any **Detrimental Code** that is or becomes named and recognized by the CERT Coordination Center, McAfee, Secunia, Symantec, or other comparable vendor or monitor of **Detrimental Code** activity.

B.   Based upon, arising out of, or attributable to an mechanical or electrical failure or interruption caused by a third party, acting independently of the **Agent** or **Agency/Agency Staff,** or by events outside the **Agent** or **Agency/Agency Staff's** control, including any electrical power interruption or surge, brownout, blackout, short circuit, over voltage, or power fluctuations;

C.   Based upon, arising out of, or attributable to the maintenance of a chat room, bulletin board or other open forum;

D.   Based upon, arising out of, or attributable to fire, smoke, explosion, lightning, wind, flood, earthquake, volcanic eruption, tidal wave, landslide, hail, act of God, or any other similar physical event however caused.



VIII. With respect to coverage provided by this endorsement, Section V. Limits of Insurance and Deductible is amended as follows:

A. The Limit of Insurance stated above is the most **We** will pay for all **Personal Data Compromise Loss** arising from all **Personal Data Compromise Incidents** occurring during the **Policy Period**.

B. **We** shall only be liable to pay **Personal Data Compromise Loss** arising from each **Personal Data Compromise Incident** which is in excess of the Deductible state above as applicable to each **Personal Data Compromise Incident**.

C. All **Personal Data Compromise Incidents** that are related, including all **Personal Data Compromise Incidents** that occur or are discovered at the same time or arise from the same cause regardless of the number of **Clients** involved will be considered one **Personal Data Compromise Incident** and subject to the Limit of Insurance and Deductible in effect at the time the first **Personal Data Compromise Incident** occurs and is reported to **Us** during the **Policy Period**.

IX. The following conditions are added to Section VI. Conditions:

A. Due Diligence

**Agent** or **Agency/Agency Staff** agree to use due diligence to prevent and mitigate any **Personal Data Compromise Incident** covered under this Endorsement, including complying with reasonable and industry accepted protocols for providing and maintaining the following:

1. Physical security for **Agent** or **Agency/Agency Staff's** premises, computer system and hard copy files;

2. Computer and internet security, including security and access controls for personal computers and laptops;

3. Periodic backups of computer files;

4. Protections for transactions, including processing credit card, debit card and check payments; and,

5. Control, storage and disposal of, and access to, any electronic or physical files containing any **Personal Information**, including shredding physical files and destroying physical media used to store physical media.

B. Duties In the Event Of a **Personal Data Compromise Incident**

In the event of a **Personal Data Compromise Incident**, **You** agree to:

1. Notify the police and any other authorities requiring notification;

2. Take all reasonable steps to protect all **Personal Information** remaining in **Agent** or **Agency/Agency Staff's** care, custody or control;

3. Give **Us** prompt written notice of the **Personal Data Compromise Incident**, providing details of how, when and where the **Personal Data Compromise Incident** occurred, and to the extent possible, and as soon as practicable, no later than thirty (30) days after the expiration of the **Policy Period**, whichever comes first. Notice must include names and contact information of the **Clients** whose **Personal Information** is involved in a **Personal Data Compromise Incident**;

4. Cooperate with **Us** in the investigation, handling and settlement of any **Personal Data Compromise Incident** and **Personal Data Compromise Loss**, including access to books and records as may be necessary; and

5. Consult with **Us** prior to the notification of **Clients** whose **Personal Information** may be involved in any **Personal Data Compromise Incident**.

144214 09 05



X.  With respect to coverage provided by this endorsement, Section VI. Condition B, Policy Extended Reporting Period is deleted in its entirety.


**All other terms and conditions remain unchanged.**



**Limited Employment Practices Liability Endorsement**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

In consideration of the additional premium paid, it is understood and agreed that the Policy is amended solely with respect to the coverage afforded by this endorsement as follows.

**Schedule**

**Limited Employment Practices Liability Coverage**

Effective Date:   11/01/2022

Deductible:  $  2,500            Each **Claim**, applicable to **Claims Expenses** and **Loss**

Limit of Insurance:  $250,000 Each **Claim** / $250,000 Aggregate each **Agent**

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.
COVERAGE – **Limited Employment Practices Liability**

A.  Section **I. COVERAGE**, **A. Insuring Agreement**, 1. is amended as follows:

1.      **We** will pay on the **Agent's** behalf all **Loss** which such **Agent** is legally obligated to pay as a result of a **Claim** first made against such **Agent** or its **Agency/Agency Staff** and reported to **Us** during the **Policy Period** in accordance with Section **VI. Conditions**, I. 2., provided that such **Claim** is for a **Wrongful Act** in the rendering or failing to render **Professional Services** in connection with a **Covered Product** if that **Wrongful Act** occurs wholly after the **Retroactive Date**, and provided that:

As of the effective date of this Policy, the **Agent** or its **Agency/Agency Staff** does not have actual or constructive knowledge of any circumstances or **Wrongful Act** which could reasonably be expected to result in a **Claim**; and

There is no other valid and collectible insurance available to the **Agent** or its **Agency/Agency Staff** for any such prior **Wrongful Act**.

The Deductible applicable to **Claim Expenses** and **Loss** each **Claim** within the coverage afforded by this endorsement is shown in the Schedule above. An Aggregate Deductible limit does not apply to this coverage.

The Limit of Insurance shown in the Schedule above as applicable to each **Agent** each **Claim** is **Our** maximum liability for **Loss** resulting from each **Claim** made against each **Agent** and its **Agency/Agency Staff** during the **Policy Period**, within the coverage afforded by this endorsement.

The Limit of Insurance shown as applicable in the Aggregate to each **Agent** is **Our** maximum liability for all **Loss** resulting from all **Claims** made against each **Agent** and its **Agency/Agency Staff** during the **Policy Period,** within the coverage afforded by this endorsement.

Such limits are part of, and not in addition to, **Our** aggregate Limit of Insurance for all **Claims** to which this coverage applies.

Section **III**. **DEFINITIONS, R. Wrongful Act** is amended by the addition of the following:

**Wrongful Act** also means **Wrongful Termination**.



Section **III. DEFINITIONS** is amended by the addition of the following for purposes of the coverage afforded by this endorsement only:

**Employee** shall mean any person within the course and scope of his or her duties and responsibilities in the regular service of the **Agent** or its **Agency** whom the **Agent** or **Agency** compensates by salary, wages and/or commissions and has the right to govern and direct in the performance of such service, including part-time, seasonal, temporary and leased workers, whether in a supervisory, co-worker, subordinate or other position. **Employee** shall not mean any person who is contracted to perform work for the **Agent** or its **Agency** or any person who is an independent contractor for the **Agent/Agency**.

**Wrongful Termination** means any actual or alleged negligent act, error or omission, or negligent misstatement or misleading statement by an **Agent** or its **Agency/Agency Staff** in connection with the termination of the employment relationship between the **Agent** or **Agency** and an **Employee**.

Section **IV. EXCLUSIONS** is amended by the addition of the following for purposes of the coverage afforded by this endorsement:

Based upon or arising from, or in any way involving breach of any agreement, whether written or oral, to limit grounds for termination of employment to specific causes, or

Based upon or arising from, or in any way involving breach of any express contract, whether written or oral, to pay any set wages or benefits, overtime, bonuses, commissions, severance payments or any similar payments, or to provide or continue benefits of any kind.

All other terms and conditions of the Policy remain unchanged.



**Property & Casualty Insurance Products Coverage Extension – Personal Lines Only**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance
Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

The coverage provided by this Endorsement shall only apply to each **Agent** who has elected such coverage.  Such **Agent** shall be specifically designated by name and their names shall be on file with the Company.

In consideration of the premium paid, it is understood and agreed that the Policy is amended solely with respect to the coverage afforded by this endorsement as follows.

1.  The Deductible applicable to **Loss** each **Claim** made against each **Agent** and its **Agency/Agency Staff** within the coverage afforded by this endorsement is:

    $2,500___  each **Claim**

2.  $ 250,000_____  is **Our** maximum liability for all **Loss** resulting from any one **Claim** made against each **Agent** and its **Agency/Agency** Staff within the coverage afforded by this endorsement and also is **Our** maximum liability for all **Claims** made against each **Agent** and its **Agency/Agency Staff** during this **Policy** within the coverage afforded by this endorsement, and such Limits are part of and not in addition to, **Our** aggregate Limit of Insurance for all **Claims** made against each **Agent** and its **Agency/Agency Staff** during this **Policy** shown in the Declarations as applicable in the Aggregate to each **Agent.**

3.  Section **III. DEFINITIONS F. Covered Product** is amended to include the following:

    **F.  Covered Product,** either in the singular or plural, means the following products offered by a **Product Provider**:

    1.  Personal Property & Casualty Insurance.

        **Covered Product** does not include any 412(i) or 419 plans or any plan or arrangement operating as a Multiple Employer Welfare Arrangement (as defined in ERISA, as amended).

4.  Section **III. DEFINITIONS N. Professional Services** is amended to include the following:

    **N.  Professional Services** means the following services rendered in connection with a **Covered Product** by the **Agent** or its **Agency/Agency Staff** to a **Client** in the conduct of such **Agent's** profession as a Property/Casualty Agent or Broker, so long as such **Agent** is properly licensed to render such services on any date on which a **Wrongful Act** involving such services is alleged to have occurred:

    1.  Soliciting (whether directly or indirectly), negotiating, placing, recommending, selling or servicing a **Covered Product**; but not including the sale, surrender, conversion or any alteration of a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**; provided, however, **Professional Services** shall not include the **Agency/Agency Staff** directly soliciting or selling products;
    2.  Providing advice or consulting solely related to a **Covered Product**, including financial planning or consulting solely related to a **Covered Product**; but not



including any advice or recommendation to, in any way, sell, convert, surrender, or alter a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**;

3.   Incidental **Claims** adjusting in connection with first party Property claims draft authority;

4.   Appraising real or personal property in connection with soliciting, placing selling, or servicing a **Covered Product**;

However, **Professional Services** shall not include in any way, whether or not by an **Insured,** the ownership, creation, formation, operation, or administration of claims for:

**a.**   Any Multiple Welfare Arrangement;

**b.**   Any health maintenance organization or preferred provider organization;

**c.**   Any pool, syndicate, association or other combination formed for the purpose of providing insurance or benefits; or

**d.**   Any risk retention group, purchasing group, captive or self-insurance program.

**All other terms and conditions of the Policy remain unchanged.**



**Amended Conditions Endorsement**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

It is understood and agreed that **VI**, **CONDITIONS, C** is hereby deleted in its entirety and replaced with the following:

**C.    Agent Contract Termination/Agent Extended Reporting Period**

**1.**    If the agency or general agency contract between the **Sponsoring Company** and any **Agent** terminates for any reason other than the **Sponsoring Company** terminating such contract for cause, then the insurance under this Policy shall continue until the end of the **Policy Period** as set forth in the Declarations or any amendments thereto.  Termination of an **Agent** contract shall also incorporate the death, total permanent disability or retirement from providing **Professional Services** of the **Agent.**

**2.**    If the **Agent** or, if the **Agent** is deceased, his or her estate, or if the **Agent** is totally and permanently disabled or retired from providing **Professional Services**, they shall have the right, upon payment of the additional premium stated in the Declarations, to purchase an Extended Reporting Period of the duration stated in the Declarations. This Extended Reporting Period applies only to a **Claim** first made against the **Agent** or its **Agency** and reported to **Us** during the Extended Reporting Period, but only for a **Wrongful Act** committed or allegedly committed before the effective date of the termination of such contract and otherwise covered by this Policy.

As a condition precedent to **2.** above, all of the following apply:

**a.**    The total premium due for this Policy must have been paid,

**b.**    The Extended Reporting Period is available by endorsement for the additional premium stated in the Declarations. It will take effect only if, within ninety (90) days after the effective date of the termination of the **Agent's** contract,     the **Agent,** or the estate of the deceased **Agent,** requests it from **Us** in writing and pays to **Us** the additional premium due.

**c.**    The right to purchase such an Extended Reporting Period will lapse unless **We** receive written notice of such election, together with payment of the additional premium due, within ninety (90) days after the effective date of the termination of the **Agent's** contract.

**d.**    The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided by this Policy.

**e.**    The Extended Reporting Period is not cancelable, and the premium will be deemed fully earned at the inception date of such Extended Reporting Period.

**f.**    The Extended Reporting Period will be subject to this Policy's remaining Limit of Insurance, if any, and the purchase of the Extended Reporting Period will not reinstate or increase any Limit of Insurance provided by this Policy.



3.    If the agency or general agency contract between the **Sponsoring Company** and any **Agent** terminates because the **Sponsoring Company** terminates such contract for cause, the **Agent** and its **Agency** shall automatically receive an extension of the insurance afforded by this Policy to apply to any **Claim** first made against the **Agent** or its **Agency** and reported to **Us** during the thirty (30) days immediately following the effective date of the termination of such contract, but only for a **Wrongful Act** committed or allegedly committed before the effective date of the termination of such contract and otherwise covered by this Policy.

It is further agreed that Section **VI Conditions, K. Cancellation and Non-renewal, 1. Cancellation,** is amended by the addition of the following:

This Policy may be cancelled by the **Agent** by mailing or delivering to **Us** advance written notice stating the reason for the cancellation and the date when thereafter the cancellation shall be effective.

If the **Agent** fails to pay a premium when due, we may cancel this Policy for non-payment of premium by mailing first class or certified mail, to the **Agent** and the agent or broker of record at their last address known to Us, written notice stating the reason for the cancellation at least ten (10) days before the effective date of cancellation.

If the **Agent** cancels, earned premium shall be computed in accordance with the customary short-rate table and procedure.  If **We** cancel, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effective or as soon as practicable thereafter, but payment or tender of unearned premium is not a condition of cancellation by **Us.**

**All other terms and conditions remain unchanged.**



## Retroactive Date Amendatory Endorsement

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

It is understood and agreed that section **III. DEFINITIONS O. Retroactive Date,** is hereby deleted in its entirety and replaced with the following:

**N.  Retroactive Date** means:

1.  The Inception Date of the **Agent's** first claims-made life insurance agents professional liability policy from which date coverage has been maintained in force without interruption; or

2.  The **Retroactive Date**, if any, shown on the **Agent's** Life Insurance Agent's Errors and Omissions Liability Policy:

   a.     Which immediately preceded the first Fireman's Fund Insurance Company Policy issued to the **Agent**; or

   b.     Which immediately preceded the date the **Agent** was first added to the Fireman's Fund Insurance Company Policy, if the **Agent** was added after the inception date of the first Fireman's Fund Insurance Company Policy, provided that there is no lapse in coverage between the termination date of that other Policy and the inception date of coverage for the **Agent** under the Fireman's Fund Insurance Company Policy.

   If a lapse in coverage exists, the **Retroactive Date** shall be:

   a.      The inception date of the first Fireman's Fund Insurance Company Policy issued to the **Agent**; or

   b.     The inception date of coverage when the **Agent** was first added to the Fireman's Fund Insurance Company Policy, if the **Agent** was added after the inception date of the first Fireman's Fund Insurance Company Policy.

When making claim for coverage for a **Wrongful Act** which occurred before the effective date of this Policy, the **Agent**  will be required to provide documentary evidence to establish the **Retroactive Date**, if any, applicable to this Policy.  Such documentary evidence shall consist of a copy of the Policy which immediately preceded this Policy or any preceding Fireman's Fund Insurance Company or affiliated company Policy of which this is a renewal.

The **Retroactive Date** for the **Sponsoring Company** shall be the same as is applicable to the **Agent** whose **Wrongful Act** gave rise to the **Claim** against the **Sponsoring Company** and the **Retroactive Date** for the **Agency/Agency Staff** shall be the same as is applicable to the **Agent** who is responsible for such **Agency/Agency Staff**.

**All other terms and conditions remain unchanged.**



**Extended Reporting Period Term Options Endorsement**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

In accordance with Section VI., CONDITIONS, C. Agent Extended Reporting Period, the optional terms are as follows:

| Term (Years) | Rate (% of Expiring Annual Premium) |
| --- | --- |
| 1 | 100% |
| 2 | 150% |
| 3 | 200% |
| 4 | 250% |
| 5 | 300% |
| 10 | 500% |

All other terms and conditions remain unchanged.



**Amended Definition of Agent Endorsement**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance
Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

In consideration of the premium paid it is understood and agreed that Section **III. DEFINITIONS, A.** is deleted and replaced by the following:

A.   **Agent**, either in the singular or the plural, means any natural person or entity that:

1.   Is a licensed life and health insurance agent who maintains an active affiliation with the Sponsoring Company;

2.   Has elected to enroll for coverage under this Policy and whose enrollment is on file with the **Sponsoring Company** or **Us**; and

3.   Has paid his or her premium for coverage.

All other Terms and Conditions remain unchanged.



**Amended Product Provider Definition**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

In consideration of the premium paid it is understood and agreed that Section **III. DEFINITIONS M. Product Provider** is deleted and replaced by the following:

**M.     Product Provider** means:
An insurance company that offers **Covered Products,** if such insurance company was authorized to transact such business in the state or jurisdiction in which such business was conducted and at the time such business was conducted; provided; however, **Product Provider** does not include a reinsurance company or a wholly or partially self-insured plan, trust or risk retention group.

**All other terms and conditions of the Policy remain unchanged.**



**Amended Insolvency Exclusion Endorsement**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

In consideration of the premium charged, it is understood and agreed that Section IV. Exclusion M., is deleted in its entirety and replaced by the following:

**M.** Based upon, arising out of or in any way involving any bankruptcy, receivership, conservatorship, insolvency, or financial inability to pay of any entity, including but not limited to a **Product Provider**, regardless of when the financial impairment of such entity began and whether or not any **Insured** was aware or could have been aware of the financial impairment of such entity. However, this exclusion shall not apply if at the time of the placement or renewal of coverage the **Product Provider** was:

**1.** An admitted insurance company rated B+ or better by A.M. Best Company;

**2.** A non-admitted insurance company rated A- or better by A.M. Best Company that is also authorized to conduct business in the applicable state in which the **Covered Product** involved was sold, placed or obtained, or;

**3.** The **Product Provider** was guaranteed or operated by a governmental body or bodies (including, but not limited to assigned risk plans, Joint Underwriting Association's, State or Federal Flood, Wind or FAIR pools or plans, or guarantee funds) or was a County Mutual reinsured by carriers rated B+ or better by A.M. Best Company.

All other terms and conditions of the Policy remain unchanged.

Page **1** of **1**



**Coverage Enhancement Endorsement - Level I**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance
Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

The coverage provided by this Endorsement shall only apply to each **Agent** who has elected such coverage.  Such **Agent** shall be specifically designated by name and their names shall be on file with the Company.

In consideration of the premium paid, it is understood and agreed that the Policy is amended solely with respect to the coverage afforded by this endorsement as follows.

1.   The Deductible applicable to **Loss** each **Claim** made against each **Agent** and its **Agency/Agency Staff** within the coverage afforded by this endorsement is:

     $500_____  each **Claim**

2.   $ 500,000_____ is **Our** maximum liability for all **Loss** resulting from any one **Claim** made against each **Agent** and its **Agency/Agency** Staff within the coverage afforded by this endorsement and also is **Our** maximum liability for all **Claims** made against each **Agent** and its **Agency/Agency Staff** during this **Policy** within the coverage afforded by this endorsement, and such Limits are part of and not in addition to, **Our** aggregate Limit of Insurance for all **Claims** made against each **Agent** and its **Agency/Agency Staff** during this **Policy** shown in the Declarations as applicable in the Aggregate to each **Agent**.

3.   Section **III. DEFINITIONS F. Covered Product** is deleted in its entirety and replaced with the following:

     **F.  Covered Product,** either in the singular or plural, means the following products offered by a **Product Provider**:
     1.   Medicare Supplemental Insurance;
     2.   Mortgage Life Insurance;
     3.   Final Expense

     **Covered Product** does not include any 412(i) or 419 plans or any plan or arrangement operating as a Multiple Employer Welfare Arrangement (as defined in ERISA, as amended).

4.   Section **III. DEFINITIONS N. Professional Services** is deleted in its entirety and replaced with the following:

     **N.  Professional Services** means the following services rendered in connection with a **Covered Product** by the **Agent** or its **Agency/Agency Staff** to a **Client** in the conduct of such **Agent's** profession as a Life or Accident and Health Insurance Agent, General Agent or Broker, or Notary Public, so long as such **Agent** is properly licensed to render such services on any date on which a **Wrongful Act** involving such services is alleged to have occurred:

     1.   Soliciting (whether directly or indirectly), negotiating, placing, recommending, selling or servicing a **Covered Product**; but not including the sale, surrender, conversion or any alteration of a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**; provided, however, **Professional Services** shall not include the **Agency/Agency Staff** directly soliciting or selling products;



2.    Providing advice or consulting solely related to a **Covered Product**, including financial planning or consulting solely related to a **Covered Product**; but not including any advice or recommendation to, in any way, sell, convert, surrender, or alter a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**;

However, **Professional Services** shall not include in any way, whether or not by an **Insured,** the ownership, creation, formation, operation, or administration of claims for:

**a.**   Any Multiple Welfare Arrangement;
**b.**   Any health maintenance organization or preferred provider organization;
**c.**   Any pool, syndicate, association or other combination formed for the purpose of providing insurance or benefits; or
**d.**   Any risk retention group, purchasing group, captive or self-insurance program.

**All other terms and conditions of the Policy remain unchanged.**



**Coverage Enhancement Endorsement - Level II**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

The coverage provided by this Endorsement shall only apply to each **Agent** who has elected such coverage.  Such **Agent** shall be specifically designated by name and their names shall be on file with the Company.

In consideration of the premium paid, it is understood and agreed that the Policy is amended solely with respect to the coverage afforded by this endorsement as follows.

1.   The Deductible applicable to **Loss** each **Claim** made against each **Agent** and its **Agency/Agency Staff** within the coverage afforded by this endorsement is:

**$500**     each **Claim**

2.   **The limit elected at time of enrollment** is **Our** maximum liability for all **Loss** resulting from any one **Claim** made against each **Agent** and its **Agency/Agency** Staff within the coverage afforded by this endorsement and also is **Our** maximum liability for all **Claims** made against each **Agent** and its **Agency/Agency Staff** during this **Policy** within the coverage afforded by this endorsement, and such Limits are part of and not in addition to, **Our** aggregate Limit of Insurance for all **Claims** made against each **Agent** and its **Agency/Agency Staff** during this **Policy** shown in the Declarations as applicable in the Aggregate to each **Agent.**

3.   Section **III. DEFINITIONS F. Covered Product** is deleted in its entirety and replaced with the following:

**F.  Covered Product,** either in the singular or plural, means the following products offered by a **Product Provider**:
1.   Medicare Supplemental Insurance;
2.   Mortgage Life Insurance;
3.   Final Expense;
4.   Individual Health Insurance;
5.   Group A&H plans provided such plans are fully insured at all times, but not including Group or Ordinary Pension or Profit Sharing Plans, Individual Retirement Accounts, Keogh Plans, 401(k) or 501(b) Plans.

**Covered Product** does not include any 412(i) or 419 plans or any plan or arrangement operating as a Multiple Employer Welfare Arrangement (as defined in ERISA, as amended).

4.   Section **III. DEFINITIONS N. Professional Services** is deleted in its entirety and replaced with the following:

**N.  Professional Services** means the following services rendered in connection with a **Covered Product** by the **Agent** or its **Agency/Agency Staff** to a **Client** in the conduct of such **Agent's** profession as a Life or Accident and Health Insurance Agent, General Agent or Broker, or Notary Public, so long as such **Agent** is properly licensed to render such services on any date on which a **Wrongful Act** involving such services is alleged to have occurred:



1. Soliciting (whether directly or indirectly), negotiating, placing, recommending, selling or servicing a **Covered Product**; but not including the sale, surrender, conversion or any alteration of a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**; provided, however, **Professional Services** shall not include the **Agency/Agency Staff** directly soliciting or selling products;

2. Providing advice or consulting solely related to a **Covered Product**, including financial planning or consulting solely related to a **Covered Product**; but not including any advice or recommendation to, in any way, sell, convert, surrender, or alter a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**;

However, **Professional Services** shall not include in any way, whether or not by an **Insured,** the ownership, creation, formation, operation, or administration of claims for:

a. Any Multiple Welfare Arrangement;
b. Any health maintenance organization or preferred provider organization;
c. Any pool, syndicate, association or other combination formed for the purpose of providing insurance or benefits; or
d. Any risk retention group, purchasing group, captive or self-insurance program.

**All other terms and conditions of the Policy remain unchanged.**



## Coverage Enhancement Endorsement - Level III

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance
Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

The coverage provided by this Endorsement shall only apply to each **Agent** who has elected such
coverage.  Such **Agent** shall be specifically designated by name and their names shall be on file with
the Company.

In consideration of the premium paid, it is understood and agreed that the Policy is amended solely
with respect to the coverage afforded by this endorsement as follows.

1. The Deductible applicable to **Loss** each **Claim** made against each **Agent** and its
   **Agency/Agency Staff** within the coverage afforded by this endorsement is:

   **$500**_____ each **Claim**

2. **The limit elected at time of enrollment** is **Our** maximum liability for all **Loss** resulting from
   any one **Claim** made against each **Agent** and its **Agency/Agency** Staff within the coverage
   afforded by this endorsement and also is **Our** maximum liability for all **Claims** made against
   each **Agent** and its **Agency/Agency Staff** during this **Policy** within the coverage afforded by
   this endorsement, and such Limits are part of and not in addition to, **Our** aggregate Limit of
   Insurance for all **Claims** made against each **Agent** and its **Agency/Agency Staff** during this
   **Policy** shown in the Declarations as applicable in the Aggregate to each **Agent.**

3. Section **III. DEFINITIONS F. Covered Product** is deleted in its entirety and replaced with the
   following:

   **F.  Covered Product,** either in the singular or plural, means the following products offered
   by a **Product Provider**:
   1. Medicare Supplemental Insurance;
   2. Mortgage Life Insurance;
   3. Final Expense;
   4. Individual Health Insurance;
   5. Group A&H plans provided such plans are fully insured at all times, but not
      including Group or Ordinary Pension or Profit Sharing Plans, Individual
      Retirement Accounts, Keogh Plans, 401(k) or 501(b) Plans;
   6. Individual and Group Life Insurance (other than Variable Life Insurance
      products), Long Term Care Insurance and Disability Income Insurance.

   **Covered Product** does not include any 412(i) or 419 plans or any plan or
   arrangement operating as a Multiple Employer Welfare Arrangement (as defined in
   ERISA, as amended).

4. Section **III. DEFINITIONS N. Professional Services** is deleted in its entirety and replaced with
   the following:

   **N.  Professional Services** means the following services rendered in connection with a
   **Covered Product** by the **Agent** or its **Agency/Agency Staff** to a **Client** in the conduct of
   such **Agent's** profession as a Life or Accident and Health Insurance Agent, General Agent
   or Broker, or Notary Public, so long as such **Agent** is properly licensed to render such
   services on any date on which a **Wrongful Act** involving such services is alleged to have
   occurred:



1. Soliciting (whether directly or indirectly), negotiating, placing, recommending, selling or servicing a **Covered Product**; but not including the sale, surrender, conversion or any alteration of a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**; provided, however, **Professional Services** shall not include the **Agency/Agency Staff** directly soliciting or selling products;

2. Providing advice or consulting solely related to a **Covered Product**, including financial planning or consulting solely related to a **Covered Product**; but not including any advice or recommendation to, in any way, sell, convert, surrender, or alter a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**;

However, **Professional Services** shall not include in any way, whether or not by an **Insured,** the ownership, creation, formation, operation, or administration of claims for:

a. Any Multiple Welfare Arrangement;

b. Any health maintenance organization or preferred provider organization;

c. Any pool, syndicate, association or other combination formed for the purpose of providing insurance or benefits; or

d. Any risk retention group, purchasing group, captive or self-insurance program.

**All other terms and conditions of the Policy remain unchanged.**



**Coverage Enhancement Endorsement - Level IV**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

The coverage provided by this Endorsement shall only apply to each **Agent** who has elected such coverage.  Such **Agent** shall be specifically designated by name and their names shall be on file with the Company.

In consideration of the premium paid, it is understood and agreed that the Policy is amended solely with respect to the coverage afforded by this endorsement as follows.

1.   The Deductible applicable to **Loss** each **Claim** made against each **Agent** and its **Agency/Agency Staff** within the coverage afforded by this endorsement is:

   **$500**      each **Claim**

2.   **The limit elected at time of enrollment** is **Our** maximum liability for all **Loss** resulting from any one **Claim** made against each **Agent** and its **Agency/Agency** Staff within the coverage afforded by this endorsement and also is **Our** maximum liability for all **Claims** made against each **Agent** and its **Agency/Agency Staff** during this **Policy** within the coverage afforded by this endorsement, and such Limits are part of and not in addition to, **Our** aggregate Limit of Insurance for all **Claims** made against each **Agent** and its **Agency/Agency Staff** during this **Policy** shown in the Declarations as applicable in the Aggregate to each **Agent.**

3.   Section **III. DEFINITIONS F. Covered Product** is deleted in its entirety and replaced with the following:

   **F.  Covered Product,** either in the singular or plural, means the following products offered by a **Product Provider**:
   1.   Medicare Supplemental Insurance;
   2.   Mortgage Life Insurance;
   3.   Final Expense;
   4.   Individual Health Insurance;
   5.   Group A&H plans provided such plans are fully insured at all times, but not including Group or Ordinary Pension or Profit Sharing Plans, Individual Retirement Accounts, Keogh Plans, 401(k) or 501(b) Plans;
   6.   Individual and Group Life Insurance (other than Variable Life Insurance products), Long Term Care Insurance and Disability Income Insurance;
   7.   Fixed and Indexed Annuities.

   **Covered Product** does not include any 412(i) or 419 plans or any plan or arrangement operating as a Multiple Employer Welfare Arrangement (as defined in ERISA, as amended).

4.   Section **III. DEFINITIONS N. Professional Services** is deleted in its entirety and replaced with the following:

   **N.  Professional Services** means the following services rendered in connection with a **Covered Product** by the **Agent** or its **Agency/Agency Staff** to a **Client** in the conduct of such **Agent's** profession as a Life or Accident and Health Insurance Agent, General Agent



or Broker, or Notary Public, so long as such **Agent** is properly licensed to render such services on any date on which a **Wrongful Act** involving such services is alleged to have occurred:

1.   Soliciting (whether directly or indirectly), negotiating, placing, recommending, selling or servicing a **Covered Product**; but not including the sale, surrender, conversion or any alteration of a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**; provided, however, **Professional Services** shall not include the **Agency/Agency Staff** directly soliciting or selling products;

2.   Providing advice or consulting solely related to a **Covered Product**, including financial planning or consulting solely related to a **Covered Product**; but not including any advice or recommendation to, in any way, sell, convert, surrender, or alter a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**;

However, **Professional Services** shall not include in any way, whether or not by an **Insured,** the ownership, creation, formation, operation, or administration of claims for:

**a.**   Any Multiple Welfare Arrangement;
**b.**   Any health maintenance organization or preferred provider organization;
**c.**   Any pool, syndicate, association or other combination formed for the purpose of providing insurance or benefits; or
**d.**   Any risk retention group, purchasing group, captive or self-insurance program.

**All other terms and conditions of the Policy remain unchanged.**



**Coverage Enhancement Endorsement – Level V**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

The coverage provided by this Endorsement shall only apply to each **Agent** who has elected such coverage.  Such **Agent** shall be specifically designated by name and their names shall be on file with the Company.

In consideration of the premium paid, it is understood and agreed that the Policy is amended solely with respect to the coverage afforded by this endorsement as follows.

1.  The Deductible applicable to **Loss** each **Claim** made against each **Agent** and its **Agency/Agency Staff** within the coverage afforded by this endorsement is per the Schedule below:

    Deductible "A":     $500 each **Claim**
    Deductible "B":     $2,500 each **Claim**

    Schedule
    Deductible "A" applies for the following **Covered Products**:
    - Mortgage Life Insurance;
    - Final Expense;
    - Individual Health Insurance;
    - Group A&H plans provided such plans are fully insured at all times, but not including Group or Ordinary Pension or Profit Sharing Plans, Individual Retirement Accounts, Keogh Plans, 401(k) or 501(b) Plans;
    - Individual and Group Life Insurance (other than Variable Life Insurance products), Long Term Care Insurance and Disability Income Insurance;
    - Fixed and Indexed Annuities.

    Deductible" B" applies for the following **Covered Products**:
    - Variable Life Insurance, Variable Annuities and Mutual Funds.

2.  <u>**The limit elected at time of enrollment**</u> is **Our** maximum liability for all **Loss** resulting from any one **Claim** made against each **Agent** and its **Agency/Agency** Staff within the coverage afforded by this endorsement and also is **Our** maximum liability for all **Claims** made against each **Agent** and its **Agency/Agency Staff** during this **Policy** within the coverage afforded by this endorsement, and such Limits are part of and not in addition to, **Our** aggregate Limit of Insurance for all **Claims** made against each **Agent** and its **Agency/Agency Staff** during this **Policy** shown in the Declarations as applicable in the Aggregate to each **Agent.**

3.  Section **III. DEFINITIONS F. Covered Product** is deleted in its entirety and replaced with the following:

    **F.  Covered Product,** either in the singular or plural, means the following products offered by a **Product Provider**:
    1.  Medicare Supplemental Insurance;
    2.  Mortgage Life Insurance;
    3.  Final Expense;
    4.  Individual Health Insurance;
    5.  Group A&H plans provided such plans are fully insured at all times, but not including Group or Ordinary Pension or Profit Sharing Plans, Individual Retirement Accounts, Keogh Plans, 401(k) or 501(b) Plans;



6.  Individual and Group Life Insurance (other than Variable Life Insurance products), Long Term Care Insurance and Disability Income Insurance;
7.  Fixed and Indexed Annuities;
8.  Variable Life Insurance, Variable Annuities and Mutual Funds.

**Covered Product** does not include any 412(i) or 419 plans or any plan or arrangement operating as a Multiple Employer Welfare Arrangement (as defined in ERISA, as amended).

4.   Section **III. DEFINITIONS N. Professional Services** is deleted in its entirety and replaced with the following:

**N.  Professional Services** means the following services rendered in connection with a **Covered Product** by the **Agent** or its **Agency/Agency Staff** to a **Client** in the conduct of such **Agent's** profession as a Life or Accident and Health Insurance Agent, General Agent or Broker, or Notary Public, so long as such **Agent** is properly licensed to render such services on any date on which a **Wrongful Act** involving such services is alleged to have occurred:

1.  Soliciting (whether directly or indirectly), negotiating, placing, recommending, selling or servicing a **Covered Product**; but not including the sale, surrender, conversion or any alteration of a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**; provided, however, **Professional Services** shall not include the **Agency/Agency Staff** directly soliciting or selling products;
2.  Providing advice or consulting solely related to a **Covered Product**, including financial planning or consulting solely related to a **Covered Product**; but not including any advice or recommendation to, in any way, sell, convert, surrender, or alter a **Covered Product**, in order to acquire or invest in anything other than a **Covered Product**;

However, **Professional Services** shall not include in any way, whether or not by an **Insured,** the ownership, creation, formation, operation, or administration of claims for:

a.  Any Multiple Welfare Arrangement;
b.  Any health maintenance organization or preferred provider organization;
c.  Any pool, syndicate, association or other combination formed for the purpose of providing insurance or benefits; or
d.  Any risk retention group, purchasing group, captive or self-insurance program.

**All other terms and conditions of the Policy remain unchanged.**



**Amended Definition of Sponsoring Company**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

In consideration of the premium paid it is understood and agreed that Section **III. DEFINITIONS, P.** is deleted and replaced by the following:

    **P.  Sponsoring Company** means:

        1.    The Affinity Partners on file with the Company;
        2.    The Financial Sales Professionals Purchasing Group.

**All other terms and conditions remain unchanged.**



**Amended Fiduciary Exclusion Endorsement**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

In consideration of the premium charged, it is agreed and understood that Exclusions  IV. E. is deleted in its entirety and replaced by the following:

**We** shall not be liable to make any payment for **Loss** in connection with any **Claim**:

E.  Based upon, arising out of or in any way involving:

Any pension, welfare or benefit plan organized for the benefit of employees of the Insured; or

Any **Insured's** obligations or services as a fiduciary or trustee for any pension, welfare or benefit plan organized for the benefit of employees of any **Insured** under ERISA, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), the Pension Benefits Act, Pension Protection Act of 2006 (PPA), including any amendments, rules or regulations promulgated under any of the foregoing, or any similar provisions of any state or local statutory or common law; or

Any services performed by any **Insured** as the Named Fiduciary, as defined by ERISA, as amended, or trustee of any Employee Benefits Plan.   Named Fiduciary shall mean any individual who assumes discretionary authority for the Plan Sponsor's responsibilities, and as that term is defined in Section 402(a) of the Employee Retirement Income Security Act of 1974, as may be revised.  However, Named Fiduciary does not include any individual acting in the capacity of Investment Manager, as that term is defined in Section 3(38) of the Employee Retirement Income Security Act of 1974, as may be revised.

**All other terms and conditions remain unchanged.**



## Amendatory Endorsement: Excluded Products and Activities

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance
Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

In consideration of the premium charged, it is hereby understood and agreed that the
following is added to Section **IV.  EXCLUSIONS** of the policy:

**V.**   Based upon, arising out of or in any way involving the design, purchase, sale, advice
or consultation regarding any of the following

1.  Internal Revenue Code Section 412(i) defined benefit plans; or

2.  Internal Revenue Code Section 419 and 419A welfare benefit plans or trusts,
including but not limited to those described in Section 419(e), Section 419A(f)(5) and
Section 419A(f)(6); and

3.  any subsequent conversion of the plans referenced above to any other IRS Code
sections.

**All other Terms and Conditions remain unchanged.**



## Limits of Liability and Basis of Premium Endorsement

| Level I Agents Pricing | | | | | | |
|---|---|---|---|---|---|---|
| | ILF | **Revenues** ████ ███ █████ ██ | **Revenues** ███ ██ | **Revenues** ███ █ ███ | **Revenues** ███ ████ | **Revenues** ███ █ |
| | | **Rates** | **Rates** | **Rates** | **Rates** | **Rates** |
| ████ ████ ████ █ | ██ | ████ | ██ | ███ | ██ | ███ |

| Level II Agents Pricing | | | | | | |
|---|---|---|---|---|---|---|
| | ILF | **Revenues** █████ ███ ███ ███ | **Revenues** ███ ██ | **Revenues** ███ █ ███ | **Revenues** ███ ████ | **Revenues** ██ ███ |
| | | **Rates** | **Rates** | **Rates** | **Rates** | **Rates** |
| ████ ████ █ | ██ | ████ | ██ | ███ | ██ | ███ |
| ████ ████ █ | ██ | ████ | ██ | ███ | ███ | ███ |
| ████ ████ █ | ██ | ████ | ██ | ███ | ██ | ███ |
| ████ ████ ███ █ | ██ | ████ | ██ | ███ | ██ | ███ |

Life & Health Agents
(2022)

Page **1** of **3**



| Level III Agents Pricing | | | | | | |
|---|---|---|---|---|---|---|
| | | Revenues | Revenues | Revenues | Revenues | Revenues |
| | ILF | ██████████ ████ ████████ ██████ | ██████ ████ | ██████ ██ ████ | ██████ ██ ████ | ██ ████ |
| | | Rates | Rates | Rates | Rates | Rates |
| ██████ ██████ ██ | ██ | ██████ | ████ ████ | ████ ████ | ████ ████ | ████ ████ |
| ██████ ██████ ██ | ██ | ██████ | ████ ████ | ████ ████ | ████ ████ | ████ ████ |
| ██████ ██████ ██ | ███ | ██████ | ████ ████ | ████ ████ | ████ ████ | ████ ████ |
| ██████ ██████ ██ | ████ | ██████ | ████ ████ | ████ ████ | ████ ████ | ████ ████ |

| Level IV Agents Pricing | | | | | | |
|---|---|---|---|---|---|---|
| | | Revenues | Revenues | Revenues | Revenues | Revenues |
| | ILF | ██████████ ████ ████████ ████ | ██████ ████ | ██████ ██ ████ | ██████ ██ ████ | ██ ████ |
| | | Rates | Rates | Rates | Rates | Rates |
| ██████ ██████ ██ | ██ | ██████ | ████ ████ | ████ ████ | ████ ████ | ████ ████ |
| ██████ ██████ ██ | ██ | ██████ | ████ ████ | ████ ████ | ████ ████ | ████ ████ |
| ██████ ██████ ██ | ███ | ██████ | ████ ████ | ████ ██ ████ | ████ ████ | ████ ████ |
| ██████ ██████ ██ | ███ | ██████ | ████ ████ | ████ ████ | ████ ████ | ████ ████ |

Life & Health Agents
(2022)



| Level V Agents Pricing | | | | | | |
|---|---|---|---|---|---|---|
| | | Revenues | Revenues | Revenues | Revenues | Revenues |
| | ILF | ███ ██ ████ | ███ ██ | ██ ██ | ██ ██ | ██ ███ |
| | | Rates | Rates | Rates | Rates | Rates |
| ████ ████ █ | ██ | ███ | ██ ██ | ██ ██ | ██ ██ | ██ ██ |
| ████ ████ █ | ██ | ███ | ██ | ██ ██ | ██ ██ | ██ ██ |
| ████ ████ █ | ██ | ███ | ██ | ██ ██ | ██ ██ | ██ ██ |
| ████ ████ █ | ██ | ███ | ██ ██ | ██ ██ | ██ ██ | ██ ██ |

| Optional Coverage | Per Claim Deductible | Rates |
|---|---|---|
| **Employment Practices Liability – Wrongful Termination** | | **Additional Cost** |
| ████████████ | ██ | ███ |

| Optional Coverage | Per Claim Deductible | Rates |
|---|---|---|
| **Property & Casualty Insurance Sales-Personal Lines Only, Limited to a maximum of 25% of total annual commissions** | | **Additional Cost** |
| ███ | ██ | ███ |

*Rates above do not include administration fees.

All Other Terms and Conditions of the Policy Remain Unchanged

Life & Health Agents
(2022)



## Amendment of Exclusions

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

In consideration of the premium paid it is understood and agreed that Section **IV. EXCLUSIONS, O**. is deleted in its entirety and replaced by the following:

O.  Based upon, arising out of or in any way involving any:

1. Promissory notes;
2. Viatical or life settlements as investments, or investments in viatical investment pools;
3. Securities (as defined in the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act of 1940, and the Investment Advisers Act of 1940, and any amendments thereto);
4. Commodities, futures contracts, or option contracts; or
5. Stranger or Investor Originated or Owned Life Insurance (STOLI), Corporate Owned Life Insurance (COLI) or any similar transactions.

All other terms and conditions of the Policy remain unchanged.

**New York Changes – 144321 03 06**

This endorsement modifies insurance provided on the following policies:

Sponsored Life Agents Errors and Omissions Liability Insurance Coverage
Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage

**A. CLAIMS MADE NOTICE**

1. The Claims Made notice on the Declarations page of the Property and Casualty Insurance Agents Errors and Omissions is replaced by the following:

   CLAIMS MADE
   This policy applies on a claims made basis. Please read this entire policy carefully.

   There is no coverage for wrongful acts prior to the indicated retroactive date. Extended Reporting Periods of 1 year and 3 years are indicated. Other than the reporting extension provided in CONDITION D - Reporting of Potential Claims, there is no coverage for claims reported after termination of this policy without the purchase of an Extended Reporting Period. Even with the purchase of an Extended Reporting Period coverage gaps may occur.

   The rates for Claims Made Coverage are lower in the initial years of coverage based on the retroactive date than the rates for occurrence coverage, but in future years the insured should expect substantial increases.

2. The Claims Made notice at the top of the Property and Casualty Insurance Agents Errors and Omissions Coverage form is replaced by the following:

   NOTICE – THIS IS A "CLAIMS MADE" POLICY.

**B.** Section **I. COVERAGE**

**C. Defense, Investigation and Settlement of a Claim** is amended as follows:

   1. Subparagraph 1. is replaced by the following:

      1. With respect to insurance provided by this Policy, **We** have the right and duty to defend **You** even if the allegations of the suit are groundless, false or fraudulent. **We** have the right to select counsel. **We** have the right to conduct any investigation or negotiation and, with **Your** consent, make any settlement of any **Claim**.

   2. Subparagraph 6. is added:

      6. If **We** determine that **We** are unable to provide **You** with a defense when an action is brought in a foreign country because **We** are prevented by law, or that **We** lack the expertise necessary to carry out the defense, then **We** will reimburse the defense expense **You** incur in that action.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Fireman's Fund Insurance Companies** as named in the policy

_[signature]_

Secretary

_[signature]_

President

**C.** Section **IV. DEFINITIONS**

    **1.** Definition **I. Loss** is replaced by the following:

    **I. Loss** means compensatory damages, whether part of an award or settlement, awarded against an **Insured. Loss** shall not include:

    **1.** Civil or criminal fines or penalties, or taxes;

    **2.** Any punitive or exemplary damages;

    **3.** The multiplied portion of any multiple damages award;

    **4.** Non-monetary relief, including any costs incurred in complying with a request, order, judgment or settlement agreement to provide non-monetary relief;

    **5.** The return or withdrawal of fees, commissions, or brokerage charges; or

    **6.** Any matter deemed uninsurable under the law pursuant to which this Policy shall be construed.

**D.** Section **IV. EXCLUSIONS**

    **1.** Exclusion **A.** is replaced by the following:

    **A.** Based upon or arising out of any dishonest, fraudulent, criminal, malicious, intentional or willful act or omission by any **Insured** or any loss expected or intended by any **Insured**.

    **2.** Exclusion **T.** is replaced by the following:

    **T**. Based upon, arising out of or in any way involving any actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of any solid, liquid, gaseous, thermal, or aural irritant, pollutant, contaminant, including but not limited to, asbestos, smoke, vapors, soot, fumes, acids, alkalis, chemicals, or waste materials (including those that are or are to be stored, recycled, reconditioned or reclaimed), into or upon land, air, water or property; or

**E.** Section **VI. CONDITIONS**

    **1.** Condition **B. Policy Extended Reporting Period** is replaced by the following:

    **B. Policy Extended Reporting**

      **1.** If the **Sponsoring Company** or **We** cancel or non-renew this policy for any reason including decrease in limits, reduction in coverage, increase in deductible, new exclusion(s), other change in coverage less favorable to the **You** and non-payment of premium or fraud if coverage has been in effect with **Us** for more than one year, the **Sponsoring Company** shall have the right upon payment of the additional premium stated in the Declarations, to purchase an Extended Reporting Period of the 3 year duration stated in the Declarations.

      **2.** The Extended Reporting Period applies only to a Claim first made against **You** and reported to **Us** during the Extended Reporting Period, but only for a **Wrongful Act** committed or allegedly committed before the end of the **Policy Period** and that

would have been covered by this Policy if such **Claim** had been first made during the **Policy Period**.

**3.** As a condition precedent to **1.** and **2.** above all of the following apply:

    **a.** The total premium for this Policy must have been paid if coverage has been in effect less than one year.

    **b.** The Extended Reporting Period is available by endorsement for the additional premium stated in item 6.a. of the Declarations.  It will take effect only, if, within 120 days after the end of the **Policy Period**, the **Sponsoring Company** requests it from **Us** in writing and pays to **Us** the additional premium due.

    **c.** The right to purchase an Extended Reporting Period will lapse unless **We** receive written notice of such selection, together with payment of the additional premium due is received within 120 days after the end of the **Policy Period**.

    **d.** The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided by this Policy.

    **e.** The Extended Reporting Period is not cancelable, and the premium will be deemed fully earned at the inception date of such Extended Reporting Period.

    **f.** The Extended Reporting Period will be subject to this Policy's Limit of Insurance reinstated to 100%.

**4.** Within 30 days of the cancellation of this Policy, **We** will provide written notice to the **Agent** of the availability of an Extended Reporting Period including the Premium charge for the Extended Reporting Period and importance of purchasing an Extended Reporting Period.

**5.** Policy Extended Reporting Premium

    **a.** We shall not charge a different premium for the Extended Reporting Period endorsement due to any rate change in **our** rates, rating plans or rating rules subsequent to issuance of the last renewal of the policy.

    **b.** The additional premium for the Extended Reporting Period will be 100% of the otherwise applicable premium stated in the Declarations.

    **c.** The additional premium is fully earned at the inception date of the Extended Reporting Period.  The Extended Reporting Period will not go into effect unless the additional premium is paid promptly when due.  If that premium is paid when due, the endorsement may not be cancelled.

    **d.** If termination of coverage was for nonpayment of premium:

        **(1)** Any monies received from the **Sponsoring Company** as payment for the Extended Reporting Period will first be applied to the such owing for the policy;

        **(2)** Any monies due to the **Sponsoring Company** as return premium arising out of the cancellation for nonpayment of premium may be applied to the Extended Reporting premium; and

        **(3)** The Extended Reporting Period will not take effect until:

      **(a)** The premium owing for the policy is paid in full; and

      **(b)** The premium owing for the Extended Reporting Period is paid promptly when due.

**6.** The insurance provided by the Extended Reporting Period will be excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, whose policy begins or continues after the Extended Reporting Period takes effect.

**7.**  **a.** **We** will provide Extended Reporting Period coverage to any person qualifying as an **Insured**, if:

      **(1)** The **Agent** is a corporation, partnership or other entity; and

      **(2)** The **Agent** is placed in liquidation or bankruptcy or permanently cease operation; and

      **(3)** The **Agent** or the designated trustee does not purchase an Extended Reporting Period;

  **b.** Such person must request Extended Reporting Period coverage within 120 days of the termination of coverage.

  **c.** **We** will have no obligation to provide any notice to any such person of the availability of the Extended Reporting Period.

  **d.** **We** may charge such person for whom coverage is provided a premium commensurate with the coverage provided.

**2.** Condition **C. Agent Contract Termination/Agent Extended Reporting Period** is replaced by the following:

**C. Agent Contract Termination/Agent Extended Reporting Period**

**1.** If the agency or general agency contract between the **Sponsoring Company** and any **Agent** terminates for any reason, the insurance under this Policy with respect to such **Agent** and its **Agency** shall cease as of the effective date of the termination of such contract, and no coverage shall be provided under this Policy with respect to any **Wrongful Act** of any such **Agent** or its **Agency** committed or allegedly committed on or after the effective date of the termination of such contract.

**2.** If the agency or general agency contract between the **Sponsoring Company** and any **Agent** terminates for any reason other than the **Sponsoring Company** terminating such contract for cause, then:

  **a.** The **Agent** and its **Agency** shall automatically receive an extension of the insurance afforded by this Policy to apply to any **Claim** first made against the **Agent** or its **Agency** and reported to **Us** during the ninety (90) days immediately following the effective date of the termination of such contract, but only for a **Wrongful Act** committed or allegedly committed before the effective date of the termination of such contract and otherwise covered by this Policy; and

  **b.** The **Agent** or, if the **Agent** is deceased, his or her estate, shall have the right, upon payment of the additional premium stated in the Declarations, to

purchase an Extended Reporting Period of the 3 year duration stated in the Declarations. This Extended Reporting Period applies only to a **Claim** first made against the **Agent** or its **Agency** and reported to **Us** during the Extended Reporting Period, but only for a **Wrongful Act** committed or allegedly committed before the effective date of the termination of such contract and otherwise covered by this Policy.

3. If the agency or general agency contract between the **Sponsoring Company** and any **Agent** terminates because the **Sponsoring Company** terminates such contract for cause, the **Agent** and its **Agency** shall automatically receive an extension of the insurance afforded by this Policy to apply to any **Claim** first made against the **Agent** or its **Agency** and reported to **Us** during the thirty (30) days immediately following the effective date of the termination of such contract, but only for a **Wrongful Act** committed or allegedly committed before the effective date of the termination of such contract and otherwise covered by this Policy.

4. Before **2.a.** and **2.b.** will apply, all of the following must also apply:

   a. The total premium for this Policy must have been paid if coverage has been in effect less than one year.

   b. The Extended Reporting Period is available by endorsement for the additional premium stated in item 6.a. of the Declarations.  It will take effect only, if, within 120 days after the end of the **Policy Period**, the **Sponsoring Company** requests it from **Us** in writing and pays to **Us** the additional premium due.

   c. The right to purchase an Extended Reporting Period will lapse unless **We** receive written notice of such selection, together with payment of the additional premium due is received within 120 days after the end of the **Policy Period**.

   d. The Extended Reporting Period does not extend the **Policy Period** or change the scope of coverage provided by this Policy.

   e. The Extended Reporting Period is not cancelable, and the premium will be deemed fully earned at the inception date of such Extended Reporting Period.

   f. The Extended Reporting Period will be subject to this Policy's Limit of Insurance reinstated to 100%.

5. Within 30 days of the cancellation of this Policy, **We** will provide written notice to the **Agent** of the availability of an Extended Reporting Period including the Premium charge for the Extended Reporting Period and importance of purchasing an Extended Reporting Period.

6. Policy Extended Reporting Premium

   a. **We** shall not charge a different premium for the Extended Reporting Period endorsement due to any rate change in **our** rates, rating plans or rating rules subsequent to issuance of the last renewal of the policy.

   b. The additional premium for the Extended Reporting Period will be 100% of the otherwise applicable premium stated in the Declarations.

   c. The additional premium is fully earned at the inception date of the Extended Reporting Period.  The Extended Reporting Period will not go into effect unless

the additional premium is paid promptly when due.  If that premium is paid when due, the endorsement may not be cancelled.

    **d.**  If termination of coverage was for nonpayment of premium:

        **(1)**  Any monies received from the **Sponsoring Company** as payment for the Extended Reporting Period will first be applied to the premiums owing for the policy;

        **(2)**  Any monies due to the **Sponsoring Company** as return premium arising out of the cancellation for nonpayment of premium may be applied to the Extended Reporting premium; and

        **(3)**  The Extended Reporting Period will not take effect until:

            **(a)**  The premium owing for the policy is paid in full; and

            **(b)**  The premium owing for the Extended Reporting Period is paid promptly when due.

  **7.**  The insurance provided by the Extended Reporting Period will be excess over any other valid and collectible insurance whether primary, excess, contingent or any other basis, whose policy begins or continues after the Extended Reporting Period takes effect.

  **8.**  **a.**  **We** will provide Extended Reporting Period coverage to any person qualifying as an **Insured**, if:

        **(1)**  The **Agent** is a corporation, partnership or other entity; and

        **(2)**  The **Agent** is placed in liquidation or bankruptcy or permanently cease operation; and

        **(3)**  The **Agent** or the designated trustee does not purchase an extended Reporting Period;

    **b.**  Such person must request Extended Reporting Period coverage within 120 days of the termination of coverage.

    **c.**  **We** will have no obligation to provide any notice to any such person of the availability of the Extended Reporting Period.

    **d.**  **We** may charge such person for whom coverage is provided a premium commensurate with the coverage provided.

**3.**  Condition **E. Reporting of Potential Claims** is replaced by the following:

Notice given by or on behalf of an **Insured,** or written notice by or on behalf of the injured person or any other claimant, to any licensed **agent** of **ours** unless that **agent** or any other person is also an **Insured,** shall be deemed notice to **Us**.

**4.**  Condition **H. Action Against Us** is amended as follows:

The following is added to subparagraph 1.

    **c.**  A final judgment means on the facts or the law by a court of the judicial branch of government having original jurisdiction which disposes of a cause of action by declaring that the plaintiff is or is not entitled to the final remedy asked for; but, final judgment does not include default judgment.

    If a final judgment remains unsatisfied after 30 (thirty) days from the entry of judgment, then an action can be maintained against **Us**.

**5.**  Condition **K. Cancellation and Nonrenewal** is replaced by the following:

  **K. Cancellation and Nonrenewal**

    **1. Cancellation**

      **a.** The **Sponsoring Company** may cancel this entire policy by mailing or delivering to **Us** advance written notice of cancellation.

      **b.** Cancellation of Policies In Effect

        **(1) 60 days or Less**

          **We** may cancel this policy by mailing or delivering to the **Sponsoring Company** written notice of cancellation at least:

          **(a)** 30 days before the effective date of cancellation if **We** cancel for any reason not included in subsection **1.b.(1)(b)** below.

          **(b)** 15 days before the effective date of cancellation if **We** cancel for any of the following reasons:

            **(i)** Nonpayment of premium, provided however, that a notice of cancellation on this ground shall inform the **Sponsoring Company** of the amount due;

            **(ii)** Conviction of a crime arising out of acts increasing the hazard insured against;

            **(iii)** Discovery of fraud or material misrepresentation in the obtaining of the policy or in the presentation of a claim,

            **(iv)** After issuance of the policy or after the last renewal date, discovery of an act or omission, or a violation of any policy condition, that substantially and materially increases the hazard insured against, and that occurred subsequent to the inception of the current **Policy Period**;

            **(v)** Required pursuant to a determination by the Superintendent that continuation of **our** present premium volume would jeopardize **our** solvency or be hazardous to the interest of **our** policyholders, **our** creditors or the public;

            **(vi)** A determination by the Superintendent that the continuation of the policy would violate, or would place **Us** in violation of, any provision of the Insurance Code.

        **(2) For More Than 60 Days**

If this policy has been in effect for more than 60 days, or if this policy is a renewal or continuation of a policy **We** issued, **We** may cancel only for any of the reasons listed in subsection **1.b.(1)(b) above,** provided:

    **(a)** **We** mail the **Sponsoring Company** written notice at least 15 days before the effective date of cancellation; and

    **(b)** If **We** cancel for nonpayment of premium, our notice of cancellation informs the **Sponsoring Company** of the amount due.

  **c.** **We** will mail or deliver our notice, including the reason for cancellation, to the **Sponsoring Company** at the address shown in the policy and to the authorized **agent** or broker.

  **d.** Notice of Cancellation will state the effective date of cancellation. The **Policy Period** will end on that date.

  **e.** If this Policy is cancelled, **We** will send the **Sponsoring Company** any premium refund due. If **We** cancel, the refund will be prorata. If the **Sponsoring Company** cancels, the refund may be less than pro rata.

    However, when the premium is advanced under a premium finance agreement, the cancellation refund will be pro rata. Under such financed policies **We** will be entitled to retain a minimum earned premium of 10% of the total premium or $60, whichever is greater. The cancellation will be effective even if **We** have not made or offered a refund.

  **f.** If notice is mailed, proof of mailing will be sufficient proof of notice.

  **g.** If one of the reasons for cancellation in subsection **1.b.(1)(b)** exists, **We** may cancel this entire policy, even if the reason for cancellation pertains only to a new coverage for endorsement initially effective subsequent to the original issuance of this policy.

  **2. Nonrenewal**

    If **We** decide not to renew this policy **We** will send notice as provided in subsection **4.** below.

  **3. Conditional Renewal**

    If **We** conditionally renew this policy subject to a:

    **a.** Change in limits;

    **b.** Change in type of coverage;

    **c.** Reduction in coverage;

    **d.** Increased deductible;

    **e.** Addition of exclusion; or

**f.** Increased premiums in excess of 10%, exclusive of any premium increase due to and commensurate with insured values added or increased exposure units; or as a result of experience rating, loss rating, retrospective rating or audit;

**We** will send notice as provided in subsection **4.** below.

**4. Notices of Nonrenewal and Conditional Renewal**

**a.** If **We** decide not to renew this policy or to conditionally renew this policy as provided in subsections **4.** and **3.** above, **We** will mail or deliver written notice to the **Sponsoring Company** shown in the Declarations at least 60 but not more than 120 days before:

**(1)** The expiration date; or

**(2)** The anniversary date if this is a continuous policy.

**b.** Notice will be mailed or delivered to the **Sponsoring Company** at the address shown in the policy and to the authorized **agent** or broker. If notice is mailed, proof of mailing will be sufficient proof of notice.

**c.** Notice will include the specific reason(s) for nonrenewal or conditional renewal, including the amount of any premium increase for conditional renewal and description of any other changes.

**d.** If **We** violate any of the provisions of subsections **4. a.,b.,**or **c.** above by sending the **Sponsoring Company** an incomplete or late conditional renewal notice or a late renewal notice:

**(1)** Coverage will remain in effect at the same terms and conditions of this policy including the Aggregate Limit increased in proportion to this extension at the lower of the current rates or the prior period's rates until 60 days after such notice is mailed or delivered, unless the **Sponsoring Company**, during this 60 day period, has replaced the coverage or elects to cancel.

**(2)** On or after the expiration date of this policy, coverage will remain in effect at the same terms and conditions of this policy for another policy period, at the lower of the current rates or the prior period's rates, unless the **Sponsoring Company**, during this additional policy period, has replaced the coverage or elects to cancel.

**e.** If **You** elect to renew on the basis of a late conditional renewal notice, the terms, conditions, and rates set forth in such notice shall apply:

**(1)** Upon expiration of the 60 day period; or

**(2)** Notwithstanding the provisions in subsection **4. d.(1)** and **d.(2),** as of the renewal date of the policy if **We** send the **Sponsoring Company** the conditional renewal notice at least 30 days prior to the expiration or anniversary date of the policy.

**f.**  **We** will not send **You** notice of nonrenewal or conditional renewal if **You**, your authorized **agent** or broker or another insurer of **yours** mails and delivers notice that the policy has been replaced or is no longer desired.

**6.** Condition **L. Other Insurance** is amended as follows:

Subparagraph 1. is replaced by the following:

**1.** If the **Insured** has other insurance that applies to a **Loss** covered by this Policy, this Policy shall be excess over any other valid and collectible insurance and shall then apply only in the amount by which the applicable Limit of Liability of this Policy exceeds the sum of all applicable Limits of Liability for all such insurance.

**7.** Condition **Q.  Transfer of Duties When a Limit of Insurance Is Used Up** is added as follows:

**Q.   Transfer of Duties When A limit of Insurance is Used Up**

**1.**   If **We** conclude that, based on the number of **Claims, Wrongful Acts**, or suits which have been reported to **Us** and to which this insurance may apply, the:

**(a)** Aggregate Limit; or

**(b)** Occurrence Limit

is likely to be used up in payment of judgments or settlements, **We** will notify the **Agent** and the **Sponsoring Company**, in writing to that effect.

**2.** When a limit of insurance described in paragraph **1.** above has actually been used up in the payment of settlements or judgments:

**(a) We** will notify the **Agent** and the **Sponsoring Company** in writing, as soon as practicable, that:

**(1)** Such a limit has been actually been used up; and

**(2)** Our duty to defend **Claims** seeking damages subject to that limit has also ended.

**(b) We** will initiate, and cooperate, in the transfer if control, to any appropriate **Agent**, of all **Claims** and suits seeking damages which are subject to that limit and which are reported to **Us** before that limit is used up. That **Agent** must cooperate in the control of said **claims** and suits.

**We** agree to take such steps, as **We** deem appropriate, to avoid a default in, or continue the defense of, such suits until such transfer is completed, provided the appropriate **Agent** is cooperating in completing such transfer.

**We** will take no action whatsoever with respect to any **Claims** or suits seeking damages that would have been subject to that limit, had it not been used up, if the **Claim** or suit is reported to **Us** after that limit of insurance has been used up.

**(c)** The **Agent,** and any other **Insured** involved in a **Claim** seeking damages subject to that limit, must arrange for the defense of such **Claim** within such time period as agreed to between the appropriate **Insured** and **Us**.  Absent any such agreement, agreements for the defense of such **Claim** must be made as soon as practicable.

   **3.** The **Agent** will reimburse **Us** for expenses **We** deem appropriate in accordance with paragraph **2. b.** above.

   The duty of the **Agent** to reimburse **Us** will begin on:

   **(a)** The date on which the applicable limit of insurance is used up, if **We** sent notice in accordance with paragraph **1.** above; or

   **(b)** The date on which **We** sent notice in accordance with paragraph **2.a.** above, if **We** did not get notice in accordance with paragraph **1.** above.

   **4.** The exhaustion of any limit of insurance by the payments of judgments or settlements, and the resulting end of **our** duty to defend, will not be affected by **our** failure to comply with any of the provisions of this Condition.

  **8.** Condition **R. Bankruptcy** is added as follows:

  **R. Bankruptcy**

   **1.** Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve **Us** of **our** obligations under this policy.

All other terms and conditions of the Policy remain unchanged.



**Premium Financing Exclusion**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

In consideration of the premium paid it is understood and agreed that Section **IV. EXCLUSIONS** is amended to include the following:

Based upon, arising out of, or in any way involving any sale, attempted sale, or servicing of any life insurance policy in which the payment or financing of any premium, in whole or in part, for such life insurance policy, whether secured from or through any premium financing company, financial institution or any other premium financing mechanism; or any representations made in connection with such premium financing.

All other terms and conditions of the Policy remain unchanged.



## Telephone Consumer Protection Act (TCPA) Exclusion Endorsement

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance
Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

---

In consideration of the premium charged, it is understood and agreed that Section IV. Exclusions is amended to include the following:

Based upon, arising out of, or in any way involving any actual or alleged violation of:

1. The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

2. The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

3. The Junk Fax Prevention Act of 2005 (JFPA), including any amendment of or addition to such law;

4. The Fair and Accurate Credit Transactions Act of 2003 (FACTA), part of the Fair Credit Reporting Act (FCRA), 15 USC 1681 et. Seq., including any amendment of or addition to such law; or

5. Any statute, ordinance or regulation other than the TCPA, JFPA, FACTA, FCRA or CAN-SPAM Act of 2003 that prohibits or limits the sending, transmitting, communicating, or distribution of material or information, or the inclusion of full credit card numbers or credit card expirations dates on any receipts provided to customers at the time of a credit card transaction or handling of or dissemination of personal financial or other information; or to such law, and any rules or regulations promulgate pursuant to such law.

All other terms and conditions remain unchanged.



**Social Engineering Exclusion Endorsement**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance
Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

In consideration of the premium charged, it is understood and agreed that Section IV. Exclusions, is amended by the addition of the following to the end thereof:

> Based upon, arising out of, or in any way involving any actual or alleged intentional misleading or manipulation of an employee by a third party through the use of a means of communication, including but not limited to, electronic, telegraphic, cable, teletype, facsimile, telephone or written instruction which is received by an employee that directs the employee to transfer, pay, or deliver money, securities, or other property.

All other terms and conditions remain unchanged.



**Employment Related Exclusion Endorsement**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

It is agreed that:

The following Exclusion Section, Subsection I is deleted in its entirety and replaced with the following:

**We** shall not be liable to make any payment for **Loss** in connection with any **Claim** based upon, arising out of, or in any way involving any **Insured's**:

1.    actual or alleged employment-related practices, acts or omissions, whether in violation of contract or statutory or common law, including without limitation: the refusal to employ; wrongful termination of employment; discrimination or harassment of any kind; breach of employment contract; wrongful demotion, evaluation, reassignment or discipline; defamation, slander or libel; invasion of privacy; infliction of emotional distress; retaliation; malicious prosecution or abuse of process; or the payment of, or failure to pay wages; except to the extent that coverage is specifically provided by endorsement to this Policy

2.    the unauthorized use, release of or collection of any confidential or private information pertaining to any employee, or the loss, theft, accidental release or accidental publication of non-public personal information.  This exclusion shall apply whether the **Insured** may be liable as an employer or in any other capacity; or

3.    Discrimination or harassment of any kind, other than any discrimination or harassment excluded in **1.** above, against any person or entity;

All other terms and conditions remain unchanged.



**Unauthorized Access Exclusion Endorsement**

Sponsored Property and Casualty Agents Errors and Omissions Liability Insurance Coverage
Sponsored Life Agents Errors and Omissions Liability Insurance Coverage

It is agreed that:

The following Exclusion is added to Section IV. EXCLUSIONS, Subsection L. is deleted in its entirety and replaced with the following:

> **We** shall not be liable to make any payment for **Loss** in connection with any **Claim** based upon, arising out of or attributable to any:
>
> **1.** unauthorized access to, collection of or use of any personal information, personal data or confidential information (other than information that is lawfully available in the public domain or to the general public unless such information which had been publically available became uniquely identifiable through collection or processing) while under the care, custody, or control of any of the following: a) an **Insured**; b) an independent contractor; or c) an outsourced service provider of a **Named Insured**; or
>
> **2.** violation of breach of laws and regulations pertaining to privacy and resulting in the activity describe in paragraph **1**;
>
> provided however, this exclusion shall not apply to the extent coverage for such events is afforded to the **Named Insured** by endorsement.

All other terms and conditions remain unchanged.

# Economic or Trade Sanctions Compliance – 145985 06 14
Policy Amendment

The following is added to the Policy and replaces any other provision in the Policy addressing economic or trade sanctions:

This insurance does not apply to the extent that economic or trade sanctions or other laws or regulations prohibit us (the Company) from providing insurance.

All other terms and conditions of the policy remain unchanged.

This Form must be attached to Change Endorsement when issued after the policy is written.
One of the **Allianz insurance companies** as named in the policy

145985 6-14
© 2015 Allianz Global Corporate & Specialty SE. All rights reserved.



Endorsement Number

## Cap on Losses from Certified Acts of Terrorism

| Policy Number | Effective Date |
|---|---|
| USF006044220011 | November 1, 2022 |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

The following provisions are added:

If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Insurer (the company providing coverage under this Policy) has met its Insurer  deductible under the Terrorism Risk Insurance Act, the Insurer shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**Certified Act of Terrorism** means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act, as amended. The criteria contained in the Terrorism Risk Insurance Act for a **Certified Act of Terrorism** include the following:

1.  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

2.  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

ALL OTHER TERMS, CONDITIONS AND LIMITATIONS REMAIN UNCHANGED.



# IMPORTANT DISCLOSURE
## NOTICE OF TERRORISM INSURANCE COVERAGE

This notice applies to all type(s) of insurance provided under this policy that are subject to the Terrorism Risk Insurance Act ("The Act"), as amended.  This policy makes available and provides at a premium of $0 insurance coverage for losses resulting from acts of terrorism.  As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury—in consultation with the Secretary of Homeland Security, and the Attorney General of the United States—to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

YOU SHOULD KNOW THAT WHERE COVERAGE IS PROVIDED BY THIS POLICY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM, SUCH LOSSES MAY BE PARTIALLY REIMBURSED BY THE UNITED STATES GOVERNMENT UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THE FORMULA, THE UNITED STATES GOVERNMENT GENERALLY REIMBURSES 80% BEGINNING ON JANUARY 1, 2020, OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURANCE COMPANY PROVIDING THE COVERAGE. THE PREMIUM CHARGED FOR THIS COVERAGE IS $0 AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS THAT MAY BE COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.