UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 25-CV-20897-RAR

WILLIAM MACHIN,

     Plaintiff,

v.

FIREMAN'S FUND INSURANCE COMPANY,

     Defendant.

_____/

## ORDER GRANTING MOTION TO DISMISS

**THIS CAUSE** comes before the Court on Defendant Fireman's Fund Insurance Company's Motion to Dismiss Plaintiff William Machin's Amended Complaint ("Motion"), filed on April 16, 2025. [ECF No. 10]. The Court held a hearing on the Motion on July 3, 2025. *See* [ECF No. 25]. Plaintiff has filed a Response, [ECF No. 16], and Defendant has filed a Reply in Support. [ECF No. 23]. The Motion is now ripe for review.

This case requires the Court to assess whether a settlement agreement is enforceable against Defendant, an insurer. Plaintiff's Amended Complaint, [ECF No. 7], alleges that two insurance agents advised Plaintiff to wire $500,000 dollars for a life insurance policy. Those wire instructions were incorrect. Defendant insured those agents under a Professional Errors and Omissions Liability Insurance Policy ("Policy") but refused to indemnify or defend the agents. Following a state-court lawsuit ("Underlying Liability Action") and negotiations, Plaintiff, the agents, and the agents' insurance company entered into a Final Consent Judgment, or *Coblentz* Agreement. The *Coblentz* Agreement settled the matter for one-million dollars and assigned the agents' original right to bring a cause of action regarding the Policy to Plaintiff.

After Defendant removed this case to federal court, *see* [ECF No. 1], Plaintiff filed an Amended Complaint, which alleges two counts against Defendant, *see* [ECF No. 7].  The first count alleges that Defendant breached its contract with the agents by denying them coverage under the Policy.  Am. Compl. ¶¶ 30–38.  The second count states that Defendant failed to act in good faith toward the agents by refusing to defend or otherwise indemnify them and thereby alleges a common law bad-faith claim.  *Id.* ¶¶ 39–44.

Plaintiff's reference to "premium financing" in the Underlying Liability Action dooms his Amended Complaint, for the plain language of the Policy and its Premium Financing Exclusion eliminate Defendant's duty to defend any claim arising out of premium financing.  Given that the Exclusion forecloses coverage, the Court **GRANTS** Defendant's Motion to Dismiss ***with prejudice***.

## BACKGROUND

This case stems from a scam.  Plaintiff William Machin wanted life insurance.  To obtain it, he sought the services of Osvaldo R. Morales and Wealth USA ("Agents"), whom the Pacific Life Insurance Company employed.  [ECF No. 10-2] ¶ 8; Am. Compl. ¶ 11.  Pacific Life provided wire instructions to the Agents, and the Agents advised Mr. Machin to send $500,000 to Pacific Life using those instructions.  *Id.*; [ECF No. 10-2] at ¶¶ 12–13.  In addition, Agent Morales sent Plaintiff a prospectus for a life insurance policy, titled "Life Insurance Premium Financing."  *See generally* Exhibit A, [ECF No. 10-2] at 20–135.  Mr. Machin did as the Agents requested and wired $500,000 dollars pursuant to the Agents' instructions.  *See* Exhibit B, [ECF No. 10-2] at 136–37; Am. Compl. ¶ 11.  But those wiring instructions were incorrect.  Pacific Life never received Mr. Machin's money, and Mr. Machin lost the $500,000 dollars he wired.  *Id.*

Defendant insured the Agents through a Policy.  Am Compl. ¶ 5.  The Policy stated that Defendant would

> pay on the Agent's behalf all Loss which such Agent is legally obligated to pay as a result of a Claim first made against such Agent or its Agency/Agency Staff and reported to Us during the Policy Period in accordance with Section VI. Conditions I.2., provided that such Claim is for a Wrongful Act in the rendering of or failure to render Professional Services in connection with a Covered Product if that Wrongful Act occurs wholly after the Retroactive Date.

Am. Compl. ¶ 6; [ECF No. 7-1] at 3.  That Policy provision coexisted with the Policy's Premium Financing Exclusion, which provided that Defendant

> shall not be liable to make any payment for Loss in connection with any Claim . . . [b]ased upon, arising out of, or in any way involving any sale, attempted sale, or servicing of any life insurance policy in which the payment or financing of any premium, in whole or in part, for such life insurance policy, whether secured from or through any premium financing company, financial institution or any other premium financing mechanism; or any representations made in connection with such premium financing.

*Id.* at 8, 70.  Agent Morales requested that Defendant cover Mr. Machin's loss under the Policy. Defendant denied that request, concluding that Agent Morales' actions would fall under the Premium Financing Exclusion.  Am. Compl. ¶ 12; Mot. at 3.

Soon after Defendant's denial of coverage, Mr. Machin filed the Underlying Liability Action in Miami-Dade Circuit Court asserting claims for breach of fiduciary duty and negligence against the Agents.  Am. Compl. ¶ 10.  Plaintiff's complaint in the Underlying Liability Action, [ECF No. 10-1], alleged that "[a]s part of the premium financing, [Plaintiff] was due to make a payment of $500,000 on or about August of 2023."  *Id.* ¶ 16.  Plaintiff's amended complaint in the Underlying Liability Action repeated that same allegation.[1]  [ECF No. 10-2] ¶ 16.

---

[1] Plaintiff did not attach materials related to the Underlying Liability Action to its Complaint or Amended Complaint.  Defendant, however, attached both Plaintiff's complaint and amended complaint from the Underlying Liability Action.  *See* [ECF Nos. 10-1; 10-2].  Ordinarily, this Court would be compelled to convert Defendant's Motion to Dismiss into a Motion for Summary Judgment, because it has attached materials outside the four corners of the Complaint.  *See Jackson v. Alto Experience*, 716 F. Supp. 3d 1327,

Following negotiations, Plaintiff, the Agents, and Pacific Life entered into a Final Consent Judgment, or *Coblentz* Agreement.  Am. Compl. ¶¶ 19, 25.  That Agreement settled the matter for one million dollars and assigned the Agents' original right to bring a cause of action regarding the Policy to Plaintiff.  *Id.* ¶ 25.

Under the *Coblentz* Agreement, Plaintiff sought to recover one million dollars from Defendant, alleging that Defendant breached its contract with the Agents by failing to defend or indemnify them, *id.* ¶¶ 30–38, and that Defendant acted in bad faith in doing so.  *Id.* ¶¶ 39–44. Defendant then removed this case to federal court.  [ECF No. 1].  After Plaintiff amended its Complaint, [ECF No. 7], Defendant filed a Motion to Dismiss, which the Court now reviews, [ECF No. 10].

## LEGAL STANDARD

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  To survive a motion to dismiss, *see* FED R. CIV. P. 12(b)(6), a claim must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

## ANALYSIS

This case asks whether the Court can enforce the *Coblentz* Agreement that the parties entered in the Underlying Liability Action.  After careful review, the Court concludes that it

---

1340 (S.D. Fla. 2024) (citing *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005)).  But district courts "may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."  *Day*, 400 F.3d at 1276.  The *Coblentz* Agreement that the Court reviews in this case stems from the Underlying Liability Action, and, as explained below, considering the enforceability of a *Coblentz* Agreement requires assessing "the underlying state court action."  *Stephens v. Mid-Continent Cas. Co.*, 749 F.3d 1318, 1322 (11th Cir. 2014).  Neither party disputes the validity of the Underlying Liability Action's complaint and amended complaint, and this Court may accordingly consider Defendant's attached documents without difficulty.

cannot.   The Underlying Liability Action states that Plaintiff wired money at the Agents' instruction pursuant to a "premium financing" agreement.   Yet the Policy that the Agents and Defendant agreed upon states that Defendant would not cover the Agents for any representations made in connection with premium financing.   Because the Agents' actions were not covered under the Policy's terms, Defendant had no duty to defend or indemnify them.   Plaintiff's breach-of-contract and bad-faith claims—which both presuppose that Defendant *had* a duty to defend or indemnify the Agents—fail.

The Final Consent Judgment, or *Coblentz* Agreement, that Plaintiff and the Agents agreed upon is fairly commonplace.   Under some circumstances, "if a liability insurer is informed of an action against its insured, but declines to defend the insured, the insurer may be held to a consent judgment entered in that action, absent fraud or collusion."   *Stephens*, 749 F.3d at 1321 (citing *Coblentz v. Am. Sur. Co. of N.Y.*, 416 F. 2d 1059, 1062–63 (5th Cir. 1969)).   Neither party disputes that Defendant declined to defend the Agents.   Am. Compl. ¶ 12; Mot. at 3.   But that fact does not resolve the matter, as three requirements must still be satisfied for a *Coblentz* Agreement to be enforceable.   First, Defendant-insurer must have wrongfully refused to defend the insured "in the underlying state court action."   *Stephens*, 749 F.3d at 1322.   Second, the Defendant-insurer must have had a duty under the insurance policy to defend or indemnify the insured.   *Id.*   Finally, the state-court settlement made between Plaintiff and the insured must be reasonable and made in good faith.   *Id.*

Evaluating the *Coblentz* Agreement requires assessing the underlying Policy.   *See Spencer v. Assurance Co. of Am.*, 39 F.3d 1146, 1149 (11th Cir. 1994) ("The determination of coverage is a condition precedent to any recovery against an insurer pursuant to a *Coblentz* Agreement.").   As this is a diversity action, the method for assessing coverage of the Policy is made pursuant to

Florida law and preferably pursuant to the Florida Supreme Court's instruction. *See Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Par.*, 790 F.3d 1173, 1182 (11th Cir. 2015) ("As a federal court sitting in diversity, we are bound to follow 'the latest statement of state law by the state supreme court.'" (citation omitted)).   Assessing Defendant's duty to defend or indemnify, then, is also a question of Florida law.

Florida law provides several principles relevant here.   When reading an insurance policy, courts are bound by the plain meaning of an insurance contract, *see State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla. 2011), and therefore cannot create insurance coverage where none exists.   *See Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979).   In evaluating an insurer's duty to defend—which is broader than an insurer's duty to indemnify—a court is inherently restricted to the "eight corners of the complaint and the policy," *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 181 (Fla. 4th DCA 2015), and "the allegations in the complaint control" in determining that duty.   *Jones v. Fla. Ins. Guar. Ass'n*, 908 So. 2d 435, 442–43 (Fla. 2005).   *See also id.* at 442–43 ("An insurer's duty to defend its insured against a legal action arises when the complaint alleges facts that fairly and potentially bring the suit within policy coverage.").

If a complaint alleges facts that fall both within and outside a policy's coverage, "the insurer is not only obligated to defend, but must defend that entire suit."   *Sunshine Birds & Supplies, Inc. v. U.S. Fid. & Guar. Co.*, 696 So. 2d 907, 910 (Fla. 3d DCA 1997).   But "because the lawsuit must be for something covered by the insurance policy, 'the insurer has no duty to defend' when 'the pleadings show the applicability of a policy exclusion.'"   *Travelers Indem. Co. of Conn. v. Richard Mckenzie & Sons, Inc.*, 10 F.4th 1255, 1261 (11th Cir. 2021) (quoting *State Farm Fire & Cas. Co. v. Tippett*, 864 So. 2d 31, 35 (Fla. 4th DCA 2003)).   If there is no duty to

defend, "nor any loss or injury for which the insurer is contractually obligated to indemnify, the insurer cannot have acted in bad faith in refusing to settle the claim." *Hartford Ins. Co. v. Mainstream Constr. Grp., Inc.*, 864 So. 2d 1270, 1272 (Fla. 5th DCA 2004).

The four corners of the complaint in the Underlying Liability Action establish that Plaintiff wired money because of assertions related to "premium financing." [ECF No. 10-2] ¶ 16. These facts control "regardless of any later developed and contradictory factual record." *Richard Mckenzie*, 10 F.4th at 1261. This assertion may have been incorrect, but that is not for the Court to decide or for the parties to dispute, as "an insurance company's duty to defend an insured is determined *solely* from the allegations in the complaint against the insured, not by the actual facts of the cause of action against the insured [or] the insured's version of the facts." *Amerisure Ins. Co. v. Gold Coast Marine Distribs., Inc.*, 771 So. 2d 579, 580 (Fla. 4th DCA 2000) (emphasis added). This rule, while sometimes harsh, is economically sensible. It would be improper for the Court to consider new information at this juncture, thereby altering a Final Consent Judgment negotiated over facts that were based on the pleadings and complaint in the Underlying Liability Action.

The four corners of the Policy further show that "any representations made in connection with [ ] premium financing" or "arising out of" premium financing are excluded from coverage. *See* [ECF No. 7-1] at 8, 70. While Plaintiff attempts to cite an independent provision of the Policy that assigns liability for "wrongful acts," *see* Am. Compl. ¶¶ 6, 33, the plain language of the Premium Financing Exclusion, read "broadly," precludes liability "arising out of" representations made in connection with premium financing. *Taurus Holdings, Inc. v. United States Fid. & Guar. Co.*, 913 So. 2d 528, 540–41 (Fla. 2005). Plaintiff made representations in the Underlying Liability

Action that alleged "premium financing" was at issue.  [ECF No. 10-2] ¶ 16.  Those assertions control.

In sum, because the Premium Financing Exclusion forecloses coverage for the Agents' actions, the "eight corners of the complaint and the policy" establish that Defendant had no duty to defend or indemnify the Agents.  *Mid-Continent Cas. Co.*, 169 So. 3d at 181.  Defendant accordingly did not breach its contract by failing to defend or indemnify the Agents, for there was no duty to be had.  *See Richard Mckenzie*, 10 F.4th at 1268 ("Because the insurance policy excluded coverage for the damages alleged in [the insured's] amended state court complaint, [the defendant-insurer] had no duty to defend or indemnify, and the *Coblentz* agreement is unenforceable for that reason.").  And since the Court concludes that the *Coblentz* Agreement is unenforceable, Plaintiff's common law bad-faith claim fails, for it depends on the existence of coverage between the Agents and Defendant.  *See Hartford Insurance*, 864 So. 2d at 1272 ("If there is no insurance coverage, nor any loss or injury for which the insurer is contractually obligated to indemnify, the insurer cannot have acted in bad faith in refusing to settle the claim. Similarly, if there is no coverage, then the insured would suffer no damages resulting from its insurer's unfair settlement practices.").[2]

---

[2] Both parties quarrel over whether the *Coblentz* Agreement was made in good faith.  *Compare* [ECF No. 10] at 8–10, *with* [ECF No. 16] at 9.  But the application of the Premium Financing Exclusion eliminates the significance of this factual dispute.  What's more, Plaintiff's bad-faith claim fails *because* "there must first be a determination regarding coverage and contractual issues between [the insurer and the insured] before an action for bad faith can proceed."  *Hartford Insurance*, 864 So. 2d at 1272 (citing *Old Republic Nat'l. Title Ins. Co. v. HomeAmerican Credit, Inc.*, 844 So. 2d 818 (Fla. 5th DCA 2003)); *see also Blanchard v. State Farm Mut. Ins. Co.*, 575 So. 2d 1289, 1291 (Fla. 1991) ("[A]n insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue.").  Because the Court concludes that the Agents were not covered by the Policy, there is no need to inquire into whether the Agreement was entered into in good faith or whether Defendant acted in bad faith by failing to defend or indemnify the Agents.

Plaintiff's contrary arguments fail.  Plaintiff includes a Denial Letter from Defendant to Agent Morales, filed before the initiation of the Underlying Liability Action.  *See* [ECF No. 16-1].  Plaintiff cites a portion of this Letter, which states that "[Agent Morales] stated the life insurance policy could not be financed with premium financing and that is why the $500,000 was being wired." *Id.* at 4.  In Plaintiff's view, the contradiction between Agent Morales' representations to Defendant and Defendant's current position (that the Underlying Liability Action relates to premium financing) underscores the point that Defendant had an obligation to defend or indemnify the Agents *because* premium financing was not ultimately at issue.  Plaintiff thus argues that this pre-suit representation from Defendant to the Agent may be properly considered because "the duty to defend may attach at some later stage in the litigation if the issues of the case are so changed or enlarged as to come within the policy coverage." [ECF No. 16] at 4.

Not so.  As an initial matter, courts in this circuit have concluded that district courts "may not [ ] consider new documents that are attached to a response in opposition to a motion to dismiss." *Adr1assist, LLC v. Lima One Cap., LLC*, 580 F. Supp. 3d 1293, 1297 (N.D. Ga. 2022); *see also Pulmonary Assocs. of Charleston PLLC v. Greenway Health, LLC*, 508 F. Supp. 3d 1268, 1274 (N.D. Ga. 2020) (same).  While this document and its substance *is* referenced in the Complaint, *see id.*, "allow[ing] the party to amend its pleading through its response"—especially without an Eleventh Circuit opinion squarely on point—counsels against using the Denial Letter in ruling on the Motion.

More importantly, even if the Denial Letter passed the aforementioned procedural bar, it would face another, insurmountable barrier.  As Defendant correctly notes, "the duty to defend is determined by the allegations in the complaint, regardless of what the insured or others maintain are the 'actual facts.'" [ECF No. 23] (citing *Jones*, 908 So. 2d at 443).  This Court thus declines

to disturb the factual allegations in the underlying complaint (and amended underlying complaint) that explicitly refer to premium financing by supplementing additional "actual facts" as Plaintiff suggests.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Dismiss Plaintiff's Amended Complaint, [ECF No. 10], is **GRANTED**.

2. This case, [ECF No. 1], is **DISMISSED *with prejudice*.** *See Corsi v. Newsmax Media, Inc.*, 519 F. Supp. 3d 1110, 1127 (S.D. Fla. 2021) (noting that amending a complaint may be futile under FED. R. CIV. P. 15(a)(2) "if the cause of action asserted therein could not withstand a motion to dismiss" (citing *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F. 3d 1514, 1520 (11th Cir. 1996)).

3. The Clerk is instructed to **CLOSE** this case.

4. Any pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Miami, Florida this 8th day of July, 2025.

**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**